**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENH CIRCUIT

MARIA CONSUELO CHAVEZ, DIANE
CONTRERAS, LORI LUCERO, OLGA
RODRIGUEZ, and TERESA SMITH,

      Plaintiffs-Appellants,

  and

MELANIE SCHIPPER,

      Plaintiff,

    v.

STATE OF NEW MEXICO d/b/a
Children, Youth and Families
Department; DEBORAH L. HARTZ,
Secretary, New Mexico Children Youth
and Families Department; ART
MURPHY, individually and as Director,
Juvenile Justice Division, New Mexico
Children, Youth and Families
Department; LEROY GARCIA,
individually and as Deputy Director,
Juvenile Justice Division, New Mexico
Children, Youth and Families
Department, New Mexico Boys' School;
MARTIN B. BOCHENEK, individually
and as Correction Administrator II, New
Mexico Children, Youth and Families
Department, Juvenile Justice Division,
New Mexico Boys' School; DANNY
CRUZ, individually and as Correction
Administrator II, New Mexico Children,

No. 02-2224

Youth and Families Department, Juvenile Justice Division, New Mexico Boys' School; GLEN HILL, individually and as Staff Development Specialist, New Mexico Children, Youth and Families Department; KARL KOCH, individually and as a Juvenile Corrections Officer of the New Mexico Children, Youth and Families Department, Juvenile Justice Division, New Mexico Boys' School,

Defendants-Appellees.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 00-423 JC/WWD-ACE)**

Dennis W. Montoya, Albuquerque, New Mexico, for Plaintiffs-Appellants.

Mark E. Komer, (Judith C. Herrera, on the brief) Herrera, Long, Pound & Komer, P.A., Santa Fe, New Mexico, for Defendants-Appellees.

Before **LUCERO** , **McCONNELL** , and **ANDERSON,** Circuit Judges.

**McCONNELL** , Circuit Judge.

This case stems from the harassing and allegedly discriminatory conduct that male employees of the New Mexico Boys' School ("School") inflicted on their female colleagues and subordinates. The School is operated by New Mexico's Children, Youth and Families Department ("CYFD"). Plaintiffs Maria

Consuelo Chavez, Diane Contreras, Lori Lucero, Olga Rodriguez, and Teresa Smith (collectively "Plaintiffs") appeal three district court rulings. First, they appeal the district court's refusal to enforce an alleged settlement agreement in which Defendants promised to pay Plaintiffs $60,000 in exchange for Plaintiffs' release of all claims. Second, Plaintiffs claim the district court erred by granting summary judgment in Defendants' favor on Plaintiffs' race discrimination, sexual harassment, retaliation, and 42 U.S.C. § 1983 claims. Third, Plaintiffs claim the district court erred when it refused to disqualify Defendants' attorney for potential conflicts of interest resulting from the fact that one defense attorney represented both the CYFD and the multiple individual Defendants in their individual and official capacities.

Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM** the district court's refusal to enforce the settlement agreement. We also **AFFIRM** its grant of summary judgment on Plaintiffs' racial discrimination, retaliation, and § 1983 claims. We **REVERSE** in part, however, the district court's grant of summary judgment on Plaintiffs' sexual harassment claims. Finally, we **AFFIRM** the district court's refusal to disqualify Defendants' attorney.

I.

Plaintiffs Chavez, Contreras, Lucero, and Smith were all state employees at the New Mexico Boys' School. Ms. Chavez was a human resources administrator,

Ms. Contreras was a social worker supervisor, Ms. Lucero was a social worker, and Ms. Smith was a psychologist. Plaintiff Rodriguez worked for a private corporation, Best's Inc., which operated the School's food services division.

The Defendants central to the case were also state employees at the School. Martin Bochenek and Danny Cruz were both correctional administrators, Glen Hill was a staff development specialist, and Karl Koch was a juvenile corrections officer. Deborah Hartz was Secretary of the CYFD during the events in question, and Art Murphy was Juvenile Justice Division; neither had any personal involvement. The CYFD is also a defendant.

The New Mexico Boys' School hired defendant Martin Bochenek in 1999 to implement a new program known as EQUIP. The harassing conduct on which Plaintiffs base their suit began shortly after Mr. Bochenek was hired, and continued until at least April 2000 and possibly as late as May 2001. As we will discuss in greater detail below, Plaintiffs' evidence demonstrates that Mr. Bochenek engaged in at least some gender-based harassment, as well as numerous acts that were hostile and threatening but not necessarily based on gender. Mr. Bochenek also uttered two opprobrious racial epithets that Plaintiffs allege rose to the level of actionable racial discrimination.

These episodes led Plaintiffs to file multiple claims with the EEOC. As a result of these filings, New Mexico's Children, Youth and Families Department

("CYFD") conducted internal investigations at the School. Plaintiffs eventually received an EEOC right to sue notice and filed a complaint on March 22, 2000, and an amended complaint on June 6, 2000. Defendants moved for summary judgment in July 2001. The parties reached a settlement agreement on October 8, 2001. Defendants agreed to pay $60,000, and Plaintiffs agreed to release all claims. But on October 5, 2001—while the parties were negotiating the final details of the October 8 settlement—Plaintiff Contreras filed a second discrimination lawsuit against the CYFD. Defendants' attorney did not learn of this second suit until shortly after the parties reached the October 8 agreement. On October 19, 2001, Defendants' attorney refused to pay the $60,000 unless Ms. Contreras dropped her second suit. Ms. Contreras insisted on pursuing the second claim, and the settlement fell apart.

Following the meltdown, Plaintiffs moved to enforce the settlement agreement. The district court denied their motion. Their case thus revived, Plaintiffs responded to the summary judgment motion Defendants had filed in July 2001. Soon after, Plaintiffs filed a motion to disqualify Defendants' attorney, claiming the State's decision to abandon settlement conflicted with the individual Defendants' best interests. The district court, unpersuaded, denied Plaintiffs' disqualification motion at the same time it granted summary judgment for Defendants. This appeal followed.

II.

*A. The Settlement Agreement*

Plaintiffs claim the district court erred when it refused to enforce the October 8, 2001 settlement agreement. We review a district court's decision on the enforcement of a settlement agreement for abuse of discretion, *Feerer v. Amoco Prod. Co.*, 242 F.3d 1259, 1262 (10th Cir. 2001), but its interpretation of a settlement agreement de novo. *Scrivner v. Sonat Exploration Co.*, 242 F.3d 1288, 1291 (10th Cir. 2001).

Generally, "the enforcement and interpretation of settlement agreements in Title VII cases are governed by federal common law because such settlements are 'inextricably linked' to the underlying law of Title VII." *Heuser v. Kephart*, 215 F.3d 1186, 1190 (10th Cir. 2000), quoting *Snider v. Circle K Corp.*, 923 F.2d 1404, 1407 (10th Cir. 1991). In *Heuser*, however, we construed a Title VII settlement agreement under New Mexico law because the parties agreed state law governed and, more importantly, the "applicable principles of contract law are not different in federal and New Mexico law." *Id.* at 1191. In this case, all parties agree that New Mexico contract law applies, *See* Appellants' Br. at 14; Appellees' Br. at 13, and we proceed accordingly.

Contracts in New Mexico, like other states, "must be factually supported by an offer, an acceptance, consideration, and mutual assent." *Heye v. Am. Golf*

*Corp., Inc.*, 80 P.3d 495, 498 (N.M. Ct. App. 2003). Even if a valid contract is formed, however, "rescission is allowed where there has been a misrepresentation of a material fact, the misrepresentation was made to be relied on, and has in fact been relied on." *Hendren v. Allstate Ins. Co.*, 672 P.2d 1137, 1140 (N.M. Ct. App. 1983). If a material misrepresentation is made or material information withheld, it does not matter whether the culpable party acted fraudulently, negligently, or innocently; rescission may follow. *Id.*

Although the district court offered no reason for its denial of the Plaintiffs' motion, we may affirm on any grounds supported by the record, *V-1 Oil Co. v. Utah State Dept. of Public Safety*, 131 F.3d 1415, 1422 (10th Cir. 1997), and there are plenty. To pick just one, the record indicates that Plaintiffs' counsel withheld material information from Defendants' attorney while negotiating the October 8, 2001 settlement: namely, that Ms. Contreras had filed a second suit on October 5, 2001. The existence of a second, undisclosed suit, similar to the one the parties were attempting to settle, was obviously a material fact. Thus, whether Plaintiffs' counsel acted "fraudulently, negligently, or innocently" by withholding that fact, Defendants were entitled to rescind the agreement, *Hendren*, 672 P.2d at 1140, and the district court properly refused to enforce it.

Plaintiffs now ask the Court to view the $60,000 settlement agreement as five separate agreements, presumably $12,000 per plaintiff. According to this

view, "settlement was achieved, at [a] minimum with respect to four out of five Plaintiffs, as to all Defendants," Reply Br. at 2, and the four agreements should be enforced accordingly. At the hearing on Plaintiffs' motion to enforce the settlement, however, Plaintiffs took precisely the opposite position. When asked by the court whether each plaintiff had an agreement to receive $12,000 out of the $60,000 settlement, Plaintiffs' counsel demurred: "I received joint authority from all five Plaintiffs . . . . It is not an agreement that each one gets a settlement." Appellants' App. at 262. Moreover, Plaintiffs cite no evidence suggesting that the parties contemplated anything short of a global settlement that would discharge the liabilities of *all* Defendants and satisfy the claims of *all* Plaintiffs. We therefore find no merit in Plaintiffs' claims.

## B. Title VII Claims

As discussed above, Plaintiffs allege Defendants violated Title VII by subjecting them to racial and sexual discrimination and by retaliating against them for reporting the alleged discrimination. Plaintiffs also seek damages under 42 U.S.C. § 1983. We review the district court's decision de novo, drawing all inferences in favor of the party opposing summary judgment. *Penry v. Fed. Home Loan Bank of Topeka*, 155 F.3d 1257, 1261 (10th Cir. 1998). We address in turn each category of claims.

### 1. Race Discrimination

Ms. Chavez, Ms. Contreras, and Ms. Lucero allege Mr. Bochenek subjected them to a racially hostile work environment because they are Hispanic.

Title VII forbids employment discrimination on the basis of race or national origin. 42 U.S.C. § 2000e-2(a)(1). To survive summary judgment on a racially hostile work environment claim, a plaintiff must show "that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment was racial or stemmed from racial animus." *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (citation omitted). A plaintiff cannot meet this burden by demonstrating "a few isolated incidents of racial enmity" or "sporadic racial slurs." *Id.*, quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412–13 (10th Cir. 1987). Instead, "there must be a steady barrage of opprobrious racial comments." *Id.*

Plaintiffs allege that Mr. Bochenek made two racially offensive remarks. First, Mr. Bochenek accused Ms. Chavez of belonging to a "clica," which Plaintiffs claim "refer[s] to a Hispanic clique." Appellants' App. at 431. Plaintiffs do not clarify whether "clica" is a derogatory term for a clique of Hispanic individuals or simply the Spanish translation of "clique." Second, Mr. Bochenek called one of Ms. Lucero's Caucasian friends and coworkers a "spic lover" in Ms. Lucero's presence. *Id.* at 482.

These two comments fall far short of the "steady barrage" required for a hostile environment claim. We do not condone Mr. Bochenek's remarks. But given their exiguity, we cannot say that Mr. Bochenek's conduct "was pervasive or severe enough to alter the terms, conditions, or privilege[s]" of Plaintiffs' employment. *Bolden*, 43 F.3d at 551.

In addition, Ms. Contreras alleges racial discrimination because she was the only Hispanic female directly in Mr. Bochenek's chain of command. Appellant's App. at 465. That is insufficient to withstand summary judgment; simply being the lone member of an identifiable racial or ethnic minority within a supervisor's chain of command, without more, does not demonstrate racial animus. *Cf. Gross v. Burggraf Constr. Co.*, 53 F.3d 1531, 1543 (10th Cir. 1995) ("The mere fact that only two women employees remained on the job at the end of the season does not support an inference that [a male supervisor] created a hostile work environment for [the plaintiff] and the other female employees . . . ."). Therefore, we AFFIRM the district court's grant of summary judgment on Plaintiffs' racial discrimination claim.

*2. Sexual Harassment*

Title VII prohibits " discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In *Meritor Savings Bank, FSB*

-10-

*v. Vinson*, 477 U.S. 57, 66 (1986), the Supreme Court held that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." However, not all harassment creates a hostile work environment; the harassment must be "sufficiently severe or pervasive to alter the conditions of [the victim's] employment." *Id.* at 67 (internal quotation marks omitted) (alteration in original). Severity and pervasiveness are evaluated according to the totality of the circumstances, *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993), considering such factors as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *O'Shea v. Yellow Technology Services, Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999), quoting *Harris*, 510 U.S. at 23.

But severity and pervasiveness are not enough. The "plaintiff must produce evidence that she was the object of harassment *because of her gender*." *Penry*, 155 F.3d at 1261 (emphasis added). Title VII is not a code of workplace conduct, nor was it "designed to bring about a magical transformation in the social mores of American workers," *Gross*, 53 F.3d at 1538. Title VII targets discrimination. Thus, a hostile environment claim requires a showing not only of severe and pervasive harassment, but of severe and pervasive harassment based on gender.

-11-

This case is difficult because, although the harassment at issue was undoubtedly severe and pervasive, only some of it was gender-based. The question then becomes whether Plaintiffs can use a substantial amount of arguably gender-neutral harassment to bolster a smaller amount of gender-based conduct on summary judgment. Our precedents say that they can: " Facially neutral abusive conduct can support a finding of gender animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly gender-discriminatory conduct." *O'Shea*, 185 F.3d at 1097. This is because what is important in a hostile environment claim is the *environment* , and gender-neutral harassment makes up an important part of the relevant work environment. Conduct that appears gender-neutral in isolation may in fact be gender-based, but may appear so only when viewed in the context of other gender-based behavior. *Penry* , 155 F.3d at 1262. Thus, when a plaintiff introduces evidence of both gender-based and gender-neutral harassment, and when a jury, viewing the evidence in context, "reasonably could view all of the allegedly harassing conduct . . . as the product of sex and gender hostility," then "it is for the fact finder to decide whether such an inference should be drawn." *O'Shea* , 185 F.3d at 1102, 1097 (emphasis omitted).

Plaintiffs allege a number of gender-based incidents. One of the first occurred at a June 1999 EQUIP training meeting, during which Mr. Bochenek

engaged in gender-based harassment of Ms. Contreras, Ms. Lucero, and Ms. Smith. Although the record does not reveal precisely what took place, Defendants concede for summary judgment purposes that Mr. Bochenek verbally abused Plaintiffs and subjected them to demeaning treatment because of their gender. Another incident took place while Ms. Chavez was visiting Mr. Bochenek's office on October 18, 1999. Mr. Bochenek situated himself in a chair "in an intimidating, forcefully seductive manner (almost vulgar)" and asked Ms. Chavez to go "Trick or Treating with him and his children." Appellants' App. at 139. Mr. Bochenek told Ms. Chavez it would be a "real experience." *Id.* This invitation—in other contexts, a benign expression of cordiality—alarmed Ms. Chavez because Mr. Bochenek had recently told her he needed to be "firm" with her and because his "facial expression and the look in his eyes was that of someone who was trying to be seductive." *Id.* at 139–40.

The new year brought no change in Mr. Bochenek's behavior. On February 24, 2000, Mr. Bochenek purposefully rubbed the front side of his body against Ms. Lucero's backside while she was collecting her mail in the mail room. On March 30, 2000, Ms. Lucero visited Mr. Bochenek's office. While there, Ms. Lucero was trying to explain her paperwork to Mr. Bochenek, but "he would not make eye contact with her as he was too involved looking at the rest of her body." *Id.* at 150. On April 6, 2000, Mr. Bochenek walked close behind Ms. Contreras

-13-

while she was in the mail room and, half under his breath, called her a "fucking bitch." *Id.* at 146, 469. Later that day, Ms. Lucero and Ms. Contreras went to the mail room together. While Ms. Lucero was reading her mail, Ms. Contreras suddenly and urgently prompted her to leave the room. Ms. Lucero looked up from her mail and noticed Mr. Bochenek standing closely behind her, "staring at her in a lewd and lascivious manner." *Id.* at 151. As Ms. Lucero attempted "to get past [Mr. Bochenek] to exit the room, she noticed defendant Bochenek massaging his genitals, which he continued to do as she exited the room." *Id.* Finally, in May 2001, Ms. Contreras alleges that Mr. Bochenek sexually propositioned her in exchange for not issuing a reprimand letter.

In addition to these perpetrator-specific incidents, Plaintiffs complain of two anonymous gender-based episodes. First, on February 29, 2000, Ms. Lucero discovered someone had scratched her name off her mailbox and replaced it with "bitch." *Id.* at 150, 481. This was apparently the first of several such occurrences. Second, on May 2, 2000, Ms. Chavez, Ms. Contreras, Ms. Lucero, and Ms. Smith each received, through the United States mail, a plain letter-sized envelope containing pornographic images. The pictures were of male genitalia; attached to each were white stickers that read "eat me bitch," "bite me," and "fuck me." We mention these two incidents but give them limited weight because Plaintiffs provided no evidence linking these incidents to the individual

-14-

Defendants.

Plaintiffs also cite multiple incidents of hostile and physically threatening conduct not necessarily connected to gender. For example, Defendants admit that after Ms. Rodriguez reported School correctional officers were taking extra food from the School cafeteria, Mr. Hill and Mr. Koch used a "training exercise" as a pretext "to physically attack plaintiff Rodriguez, resulting in permanent or prolonged serious physical injury." Mr. Cruz then contacted Ms. Rodriguez's employer and accused her of knowingly hiring illegal Mexican nationals; after investigating, her employer determined these allegations were false. On another occasion, Mr. Bochenek pursued Ms. Chavez on the interstate, driving in an aggressive and dangerous manner and placing her in fear of her own safety and that of her passenger. Ms. Chavez also received a death threat on her answering machine; the caller disguised his voice and told her to "prepare to die." The New Mexico State Police traced this call to Mr. Cruz's office.

Plaintiffs allege other incidents of harassment that, while arguably gender-neutral, interfered with their work performance or otherwise altered the conditions of their employment. Ms. Lucero received a letter of reprimand at Mr. Bochenek's insistence, even though her immediate supervisors found Mr. Bochenek's allegations were unsubstantiated. Ms. Smith, in turn, had her files audited four times by outside auditors—at Mr. Bochenek's request—after she

filed this lawsuit. Mr. Bochenek and Mr. Cruz interfered with Ms. Smith's therapeutic relationships with her clients. For example, both men told several of Ms. Smith's clients that she had lied to them about getting them treatment or parole; one of those clients later physically threatened Ms. Smith because he thought she had lied to him. Mr. Bochenek also faulted Ms. Smith's work for trivial or non-existent issues, holding her work to a higher standard than that of her male counterparts. He nit-picked Ms. Lucero's work and assigned her case management duties without a corresponding salary increase. He gave Ms. Contreras lengthy assignments which he then deemed unimportant and refused to collect. And he gave Ms. Smith tasks outside her job description and demeaned her intelligence. In the end, even Mr. Cruz joined in, criticizing Ms. Chavez's work for minor issues and taking away job duties she regularly performed.

Finally, Plaintiffs point to two additional incidents of harassment which they allege occurred in retaliation for filing this lawsuit. Although their retaliation claim ultimately fails, *see infra* at 24-26, these incidents are still relevant to the hostile environment claim. First, on April 7, 2000, Mr. Cruz made copies of a newspaper article describing Plaintiffs' lawsuit and distributed the copies to all employee mailboxes and to an orientation class for new employees. According to Plaintiffs, this caused other School employees to treat them differently, whispering behind their backs and shunning them "as if [they] had a

-16-

contagious deadly disease." *Id.* at 470. Ms. Chavez also alleges that, while the EEOC complaint was pending, Mr. Bochenek feigned friendship with her in an attempt to acquire confidential information about the proceedings. When she refused to answer his questions, he became angry and tried to intimidate her.

Despite this laundry list of gender-based and threatening, gender-neutral harassment, most of which occurred within one year of the June 1999 EQUIP training meeting, the district court found that "Plaintiffs fail[ed] to demonstrate that Defendant Bochenek's actions were sufficiently severe and pervasive 'to alter the conditions of [Plaintiffs'] employment, and create an abusive working environment.'" Appellants' App. at 543–44. According to the court, the instances of gender-based harassment, "though unpleasant, would not interfere with a reasonable person's work performance, for they do not reek of a sexually hostile working environment, as they were not physically threatening, severe or pervasive." *Id.* at 544. Of the many instances of arguably gender-neutral harassment, the district court considered only one: it found that Mr. Bochenek's pursuit of Ms. Chavez on the highway was not gender-based and therefore not actionable. *Id.* In conclusion, the court noted that "Bochenek's and Cruz's behavior cannot be deemed actionable sexual harassment, for a male co-worker took Family and Medical Leave due to his 'anxiety and depression over the constant belittling that Bochenek and Cruz did to him.' These Defendants, thus,

-17-

seem not to discriminate between who they wish to intimidate."    *Id.*

We hold the district court erred by granting summary judgment in favor of all defendants on all claims. Instructive in this regard is our decision in    *O'Shea* , 185 F.3d 1093, in which we reversed a grant of summary judgment for the defendants where both the gender-based and arguably gender-neutral harassment were less severe and pervasive than they are here. In    *O'Shea* , the plaintiff overheard the defendant making fun of his wife and making derogatory comments about women in general.    *Id.* at 1098. She also overheard the defendant describing a dream he had in which he watched a woman jumping naked on a trampoline.    *Id.* On another occasion, the defendant allegedly said, "Playboy is superior to a wife because at least with Playboy you get variety."    *Id.* And the defendant also told several coworkers that the plaintiff was going to file a sexual harassment suit against him, which, according to the plaintiff, caused her coworkers to treat her badly.    *Id.* at 1099. Finally, the plaintiff reported that two other coworkers "made derogatory comments about women jokingly all the time." *Id.*

In light of this gender-based harassment, we found that a reasonable jury could infer that other, facially gender-neutral conduct was also gender-based. Ms. O'Shea complained that male coworkers never invited her to lunch unless she invited herself; male coworkers avoided discussing technical matters with her and

became generally uncommunicative; and one male coworker entered her cubicle and shouted that the plaintiff was doing things incorrectly and was "going to screw up the whole system." *Id.* Furthermore, the plaintiff was refused access to passwords that were necessary for her work; coworkers refused to explain important work projects to her; and a male coworker was permitted to attend a programming class from which the plaintiff was excluded. *Id.* at 1100. When the plaintiff complained to her supervisors they were indifferent, if not resistant. One supervisor refused to acknowledge the problem and told the plaintiff to "take a vacation and get a tan." *Id.* Another yelled at her, "Can't you see that you're the problem?" *Id.* at 1100-01. Finally, during a discussion of the problem with her most trusted supervisor, the supervisor yelled, "What I see before me is an extremely paranoid person totally lacking in self-confidence." *Id.* With that, the plaintiff resigned.

Examining the evidence as a whole, we reversed the district court's grant of summary judgment. We found that

> the obviously sex and gender-motivated conduct—including Mr.
> Jones' comparison of his wife to a Playboy magazine, his description
> of his dream, his remarks that Plaintiff was going to file a sexual
> harassment suit against him, and Mr. Jones' and others' derogatory
> comments about women—so poisoned the entire body of conduct
> toward Plaintiff that a jury reasonably could view *all* of the allegedly
> harassing conduct . . . as the product of sex and gender hostility.

*Id.* at 1102 (emphasis supplied). We also found that the entire body of conduct

created a genuine issue of material fact as to severity and pervasiveness, and summary judgment was therefore improper. *Id.*

Plaintiffs in this case have presented considerably stronger evidence of a hostile work environment than the plaintiff in *O'Shea*. In *O'Shea*, the gender-based conduct consisted almost exclusively of derogatory comments about women, many of which were not even directed at the plaintiff. Here, Mr. Bochenek sexually propositioned Ms. Contreras in exchange for not issuing a reprimand letter. He stood close behind Ms. Lucero in the mail room, staring at her lewdly and massaging his genitals as she tried to exit; on another occasion he purposefully rubbed the front side of his body against her backside while she was collecting her mail. Finally, he called Ms. Contreras a "fucking bitch" and made a lewd, seductive invitation to Ms. Chavez for a "real experience." All of this conduct is substantially more severe than that in *O'Shea*.

From this conduct, a jury could infer that the arguably gender-neutral harassment—which was also more severe in this case than in *O'Shea*—was in fact based on gender. In *O'Shea*, coworkers failed to invite the plaintiff to lunch; here, Mr. Cruz left a death threat on Ms. Chavez's answering machine. In *O'Shea*, coworkers avoided discussing technical matters and became generally uncommunicative with the plaintiff; here, coworkers incited a plaintiff's clients against her and issued unwarranted letters of reprimand. In *O'Shea*, a coworker

-20-

loudly informed the plaintiff that she was doing her work incorrectly; here, Mr. Bochenek engaged in a dangerous, high-speed chase of Ms. Chavez on the highway. Of course, it is difficult to compare scenarios on the basis of descriptions on paper. Every workplace is different. But the point is that in light of our precedents, there is a material issue of fact as to whether Plaintiffs faced gender-based harassment severe and pervasive enough to alter the conditions of their employment. The district court's sweeping grant of summary judgment was therefore inappropriate.

This does not mean Plaintiffs' case is without its weaknesses. Plaintiffs point to several examples of gender-based harassment perpetrated by Mr. Bochenek; from this, a reasonable jury could infer that other incidents involving Mr. Bochenek—such as his high-speed chase of Ms. Chavez—though facially neutral, were also motivated by gender. But it is a far greater inferential leap to impute *Mr. Bochenek's* motive to the facially neutral conduct of *other employees*, such as Messrs. Cruz, Hill, and Koch. For example, Hill and Koch used a training exercise as a pretext to physically assault Ms. Rodriguez. This occurred shortly after Ms. Rodriguez reported that correctional officers (of whom Koch was one) were taking extra food from the school cafeteria. In spite of the fairly obvious inference that Hill and Koch were motivated by Ms. Rodriguez's whistle-blowing, Plaintiffs ask us to infer instead that they were motivated by gender; and this

simply because Mr. Bochenek, who had nothing to do with the assault, was motivated by gender on separate occasions. No reasonable jury could make this inference.

Mr. Cruz presents a similar, although less acute, problem. Mr. Cruz allegedly left the death threat on Ms. Chavez's answering machine and nit-picked her work, accused Ms. Rodriguez of hiring illegal immigrants, interfered with Ms. Smith's client relationships, and disseminated to all employees copies of a newspaper article regarding this lawsuit. Most of this conduct is facially neutral; the dissemination of the newspaper article, however, is not. We considered similar conduct in O'Shea[1] to be gender-based, and the same rationale applies here: the alleged effect of the conduct was to punish plaintiffs for exercising their Title VII rights by alienating them from their fellow employees. Furthermore, a jury could infer a similar motive for the death threat, given the fact that Mr. Cruz made it while Ms. Chavez was away from work testifying in depositions for this lawsuit. Finally, it appears that Mr. Cruz worked in tandem with Mr. Bochenek to interfere in Ms. Smith's professional relationships; and the fact that Mr. Cruz worked with Mr. Bochenek to do so makes it at least somewhat more likely that he shared Mr. Bochenek's illicit motive. We therefore conclude that a reasonable

---

[1]The defendant told coworkers that the plaintiff was going to file a sexual harassment suit against him. *Id.* at 1099.

-22-

jury could conclude that Mr. Cruz's conduct was gender-based.

Where does this leave us on summary judgment? Ms. Rodriguez's claim fails because it was based almost exclusively on Hill and Koch's assault, as to which, as we have said, plaintiffs introduced no evidence of gender-based motivation. We therefore affirm the district court's grant of summary judgment on her claim. We also affirm the grant of summary judgment on Plaintiffs' claims against defendants Hartz and Murphy, against whom Plaintiffs have offered no evidence. However, we reverse the district court's grant of summary judgment on the claims of Ms. Chavez, Lucero, Contreras, and Smith against Bochenek, Cruz, and the CYFD. [2] As noted above, a reasonable jury could conclude that all of Bochenek's and Cruz's harassment was gender-based; and when considered as a whole, a reasonable jury could also conclude that the harassment was severe and pervasive enough to alter the conditions of Plaintiffs' employment.

*3. Retaliation*

Plaintiffs' third Title VII claim arises under 42 U.S.C. § 2000e-3, which "prohibits an employer from discriminating against an employee in retaliation for

---

[2]Because the district court concluded that there was no hostile work environment, it never reached the question of whether the CYFD could be held liable for the actions of its employees. *See generally Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664 (10th Cir. 1998). Neither party has argued the issue on appeal, and we cannot decide it on the present record. We therefore leave the issue to the district court on remand.

-23-

opposing unlawful employment practices." *Penry*, 155 F.3d at 1263, citing 42 U.S.C. § 2000e-3(a). A plaintiff establishes a prima facie case of Title VII retaliation by showing that "(1) she engaged in protected opposition to Title VII discrimination or participated in a Title VII proceeding; (2) she suffered an adverse employment action contemporaneous with or subsequent to such opposition or participation; and (3) there is a causal connection between the protected activity and the adverse employment action." *Id.* at 1263–64 (internal quotation marks omitted). We liberally define the phrase "adverse employment action," but we have not delineated precise metes and bounds, preferring instead a more flexible, case-by-case approach. *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). We have made clear, however, that "[r]etaliatory conduct other than discharge or refusal to rehire is . . . proscribed by Title VII only if it alters the employee's 'compensation, terms, conditions, or privileges of employment,' or 'adversely affect[s] his [or her] status as an employee.'" *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998) (alteration in original).

Plaintiffs' appellate brief does not state which actions comprise the alleged retaliation. Instead, it spends four pages discussing *Owens v. Rush*, 654 F.2d 1370 (10th Cir. 1981), where we held the plaintiff Undersheriff was within the personal staff exception of 42 U.S.C. § 2000e(f) and thus outside Title VII

-24-

coverage, without explaining why *Owens* aids their cause. This is sufficient grounds to deem the issue waived. *See Gaither v. Aetna Life Ins. Co.*, 388 F.3d 759, 777 (10th Cir. 2004) ("[A]n issue listed, but not argued in the opening brief is waived."). Nevertheless, we have examined the district court's opinion to determine the basis for the retaliation claims and we find that they are meritless.

In the court below, Ms. Lucero and Ms. Smith claimed, and Mr. Bochenek conceded, that he "gave them extra duties without commensurate pay." Appellants' App. at 546. Ms. Contreras complained that, "although she received a promotion after filing her complaint, she has yet to obtain the promised increase in salary." *Id.* Plaintiffs claimed their receipt of pornographic materials and Mr. Cruz's "placement of the newspaper article in their mailboxes detailing Plaintiffs' suit constitutes retaliation." *Id.* at 546–47. Finally, Ms. Contreras and Ms. Lucero claimed they each received a letter of reprimand in retaliation for participating in this suit. *Id.* at 547.

The district court dismissed Plaintiffs' retaliation claim because they "fail[ed] to demonstrate any actionable adverse employment actions." *Id.* at 546. This finding is arguably incorrect; Plaintiffs' claims of additional duties or enhanced responsibilities without commensurate pay increases could establish an unlawful alteration of the "compensation, terms, conditions, or privileges" of their employment. *Sanchez*, 164 F.3d at 533. The reason these claims fail,

-25-

however, is that Plaintiffs have failed to demonstrate the requisite "causal connection between the protected activity and the adverse employment action[s]." *Penry*, 155 F.3d at 1264. The only incident where the evidence suggests even an arguable causal connection to Plaintiffs' protected activity was Mr. Cruz's dissemination of a newspaper article describing their sexual harassment suit; but this incident did not alter the terms of Plaintiffs' employment. We therefore affirm the district court's dismissal of Plaintiffs' retaliation claims.

*4. Section 1983 and Other Claims*

In the proceedings below, Plaintiffs alleged multiple miscellaneous causes of action, including violations of 42 U.S.C. § 1983, failure to adequately train and supervise, assault and battery, and others. The district court found these claims were

> so inadequately represented, much less argued, that the Court refuses to go on a fishing expedition in search of legal analysis and facts to support these claims. . . . Moreover, to meet the summary judgment burden, the non-movant must specify evidence in the record and demonstrate the precise manner in which that evidence supports its claims. In the present case, although Plaintiffs provide affidavits, they leave it to this Court to determine how the affidavits are relevant to their allegations in the complaint. Plaintiffs, thus, fail to meet their burden under summary judgment.

Appellants' App. at 549 (citation omitted).

The portion of Plaintiffs' appellate brief devoted to these issues suffers from the same shortcoming as their trial materials. The slightly more than one

-26-

page of argument presented does not point us to record evidence that would allow us to give proper or meaningful consideration to these claims. "Without a specific reference, we will not search the record in an effort to determine whether there exists dormant evidence which might require submission of the case to a jury." *Gross*, 53 F.3d at 1546 (internal quotation marks and citation omitted). We thus AFFIRM the district court's grant of summary judgment on these issues.

## C. Dunton *Conflicts*

Finally, Plaintiffs argue the district court erred by refusing to disqualify Defendants' attorney. They claim defense counsel's decision not to settle for $60,000 created a conflict of interest between the State and the individual defendants in their individual capacities. We review a district court's decision on a motion to disqualify counsel for abuse of discretion. *McEwen v. City of Norman*, 926 F.2d 1539, 1550 (10th Cir. 1991).

Plaintiffs' claim is based on *Dunton v. County of Suffolk*, 729 F.2d 903, 907 (2d Cir. 1984), in which one attorney defended both a governmental entity and an individual defendant in his individual capacity in a § 1983 case. The County's defense—that its co-defendant police officer acted outside the scope of his official duties—undermined the police officer's good faith immunity defense, thereby creating a conflict of interest between the attorney's two clients. *See id.* Neither plaintiff's nor defendants' counsel raised the conflict, although the

Second Circuit noted that even plaintiff's counsel "should . . . have been aware of the problem and should have called it to the attention of the court." *Id.* at 909. In the end, the Second Circuit vacated the judgment against the police officer defendant and remanded the case for a new trial because "the trial court had a duty to inform [defendant] of the conflict." *Id.* at 909.

A degree of skepticism is in order when one party seeks disqualification of opposing counsel based on allegedly deficient representation of the opposing party. In *Dunton*, the *defendant* benefitted when the court disqualified his defense counsel because the result of the disqualification was reversal of a decision in *plaintiff's* favor; we are reluctant to allow Plaintiffs to employ a similar motion to reverse a decision in Defendants' favor. And in any event, Plaintiffs have failed to present any evidence suggesting that Defendants' attorney took action to benefit the State or the CYFD at the individual Defendants' expense. Absent evidence of a conflict of interest, we cannot conclude that the district court abused its discretion by denying Plaintiffs' disqualification motion. We therefore AFFIRM the district court's ruling on this issue.

### III.

The district court's refusal to enforce the settlement agreement was not an abuse of discretion and is **AFFIRMED**. We also **AFFIRM** the grant of summary judgment on Plaintiffs' Title VII race discrimination, retaliation, and Section

1983 claims. As to Plaintiffs' Title VII sex discrimination claims, we **AFFIRM IN PART** and **REVERSE IN PART**. The Title VII sex discrimination claims of Plaintiffs Chavez, Contreras, Lucero, and Smith against Defendants Bochenek, Cruz, and CYFD are **REMANDED** for proceedings as outlined above. Summary judgment against Plaintiff Rodriquez and in favor of Defendants Hartz and Murphy is **AFFIRMED**. Finally, because the district court did not abuse its discretion when it denied Plaintiffs' *Dunton* motion, this ruling is **AFFIRMED**.