**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**June 21, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

ALIU ALABI,

    Plaintiff - Appellant,

v.

THOMAS J. VILSACK, Secretary, United
States Department of Agriculture,[*]

    Defendant - Appellee.

No. 20-2081
(D.C. No. 1:18-CV-00931-RB-LF)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **HARTZ**, **BRISCOE**, and **BACHARACH**, Circuit Judges.
_____

Aliu Alabi appeals pro se from the district court's grant of summary judgment

in favor of his employer, the United States Department of Agriculture (USDA), on

his Title VII claims. *See* 42 U.S.C. §§ 2000e to 2000e-17. The district court

concluded that most of Alabi's claims were unexhausted and that his remaining

---

[*] On February 23, 2021, Thomas J. Vilsack became Secretary of the United
States Department of Agriculture. Consequently, his name has been substituted for
Sonny Perdue as Defendant-Appellee, per Fed. R. App. P. 43(c)(2).

[**] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

claims of retaliation and a hostile work environment failed on the merits. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

I

Alabi is an African-American native of Nigeria. He began working for the USDA in 2008 and in 2011 was assigned to the USDA's Employment Relations Classification and Policy Department (policy unit). In that capacity, he earned mostly positive performance appraisals for his work reviewing employment matters and contracts with the human resources department.

In 2013, Alabi participated in a conference call to determine whether another employee was eligible for an extension of his employment term. Alabi advised against granting the extension, and the employee's supervisor, Nathaniel Anderson, asked several questions about the policy unit's interpretation of the governing regulations. Alabi answered the questions, but afterwards, Alabi's supervisor, Diana Ganley, learned that he did so in a rude and abrupt manner. Ganley asked Anderson for his recollection of the call, and although Anderson was reticent, he remembered "Alabi bluntly stated that it was not [Anderson's] job to interpret policy and that [he] should not question [Alabi's] interpretation." R. at 313. Anderson indicated "[t]he general tone of the conversation [was] that" the policy unit "did not need to provide any written explanation or justification for [its] policy decisions" other than the governing regulation. *Id.*

On July 19, 2013, Ganley issued Alabi a "Letter of Warning" (LOW) for "unacceptable conduct" during the conference call. R. at 233-34. The LOW stated

2

that Alabi "became quite rude with Mr. Anderson because he disagreed with [Alabi's] assessment," but that "[n]o matter how difficult these conversations become, we must all remain civil." R. at 233. It further indicated that Ganley had verbally warned him in the past about his demeanor and cautioned him about his civility when conducting business. Moreover, the LOW alerted him that his failure or refusal to adhere to its expectations and instructions could subject him to further disciplinary action, including removal from federal service, and that the LOW would "be retained in a confidential, non-permanent file for one . . . year." *Id.*

Alabi filed a grievance challenging the LOW on July 30. He also met with the assistant director of human resources, Arthur Gonzales, who orally rescinded the LOW at the end of their meeting. *See* R. at 230, ¶ 6. Gonzales advised Alabi that LOWs are not disciplinary and are not placed into an employee's official electronic personnel file. After their meeting, Alabi emailed Gonzales and thanked him "for dismissing the letter of warning." R. at 236.

Several months later, on November 30, 2013, Alabi filed an Equal Employment Opportunity (EEO) charge with multiple attachments alleging that:

- on June 28, 2013, someone took his cell phone from his desk and used it to take pictures of apes;

- on July 2, 2013, he found chewing gum on his car and discovered his car antenna had been broken;

- on July 19, 2013, he was subjected to reprisal when he received the LOW; and

- on August 27, 2013, his lunch bag had been "torn in a way that a hand" could enter the bag, R. at 187.

3

He added that he was denied a promotion and set up in many ways—for example, by receiving the LOW—because he is "a black foreigner with an accent." R. at 189.

The USDA's Office of Adjudication agreed to investigate Alabi's specific claims that he was discriminated against because he was issued the LOW on July 19, 2013; an unidentified person broke his car antenna in his work parking lot; an unidentified person took his phone from his desk and took pictures of apes; an unidentified person put chewing gum on the handle of his car door; a coworker ridiculed him when another coworker said she smelled something; and an unidentified person tampered with his lunch bag.

Alabi did not attempt to amend his EEO charge during the investigation. But he did request a hearing with the Equal Employment Opportunity Commission (EEOC) and later sought to amend his EEO charge to add additional claims for failure to accommodate a disability, receipt of a low performance rating, and non-selection for a promotion. An administrative judge denied his requests to amend and entered judgment in favor of the USDA. The USDA's Office of Adjudication issued a final order implementing that decision.

Alabi appealed to the EEOC's Office of Federal Operations, challenging the disposition of his claims based on the LOW, the photos of apes, the chewing gum on his car, and his torn lunch bag. When his appeal failed, he filed suit in federal court.

Alabi filed a nine-count amended complaint alleging:

I.    retaliation based on the LOW;

4

II. a hostile work environment;

III. retaliation based on reduced job responsibilities;

IV. retaliation based on a low performance rating;

V. retaliation based on a job transfer;

VI. retaliation based on decreased promotional opportunities;

VII. discrimination based on race;

VIII. discrimination based on disability; and

IX. discrimination based on national origin.

On cross-motions for summary judgment, the district court ruled that Counts III through IX were unexhausted and Counts I and II, alleging retaliation based on the LOW and a hostile work environment, failed on the merits. Alabi appealed.

II

*A. Counts III through IX: Lack of Exhaustion*

We review the district court's exhaustion ruling de novo. *Smith v. Cheyenne Ret. Invs., L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018). Under Title VII, a plaintiff's failure to exhaust his federal claims enables an employer to raise lack of exhaustion as an affirmative defense. *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1185 (10th Cir. 2018). "[A] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1186 (10th Cir. 2007) (internal quotation marks omitted). To exhaust a federal claim, "the charge must contain facts concerning the discriminatory and retaliatory

5

actions underlying each claim; this follows from the rule that each discrete incident of alleged discrimination or retaliation constitutes its own unlawful employment practice for which administrative remedies must be exhausted." *Id.* (internal quotation marks omitted). "The ultimate question is whether the conduct alleged in the lawsuit would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Smith*, 904 F.3d at 1164 (brackets and internal quotation marks omitted).

Alabi's EEO charge complained about the LOW, the chewing gum on his car, its broken antenna, the photos of apes on his phone, and his torn lunch bag. The Office of Adjudication agreed to investigate these and additional allegations that a coworker ridiculed him when another coworker said she smelled something. But an investigation of these discrete incidents would not reasonably encompass Alabi's claims in Counts III through IX, which alleged retaliation based on reduced job responsibilities, a low performance rating, a job transfer, reduced opportunities for promotion, and discrimination based on race, disability, and national origin.

Alabi's EEO charge made only a vague, passing comment that he was denied a promotion but otherwise stated no factual basis for this or any of the other allegations in Counts III through IX. The EEO charge alleged someone had taken photos of apes with his phone, but that discrete incident was a factual predicate for the hostile work environment claim in Count II, not the race and national origin claims in Counts VII and IX. Instead, the amended complaint predicated the race and national origin claims on Ganley's issuance of the LOW and unexplained dissimilar treatment of

6

white or similarly situated employees. Specifically, the race discrimination claim in Count VII disputed Ganley's rationale for issuing the LOW and alleged that three white employees were treated more favorably. *See* R. at 23, ¶¶ 103-05. But Alabi's EEO charge made no mention of these white employees being treated disparately, and although it contested the LOW, it expressly characterized the LOW as "reprisal" as alleged in Count I. R. at 187. Similarly, Alabi's national origin claim in Count IX alleged Ganley took adverse action against him, presumably by issuing the LOW,[1] while similarly situated employees who were American-born citizens without an accent were treated more favorably. *See* R. at 25, ¶¶ 119-20. Although the EEO charge described Alabi as a "black foreigner with an accent" who called for "fair treatment," R. at 189, it made no mention of similarly situated American-born employees receiving different treatment than he received. Absent any allegations in the EEO charge that white or American-born employees were treated more favorably, Alabi failed to exhaust Counts VII and IX. *Cf. Annett v. Univ. of Kan.*, 371 F.3d 1233, 1238 & n.2 (10th Cir. 2004) (holding that plaintiff failed to exhaust her claim of retaliation based on her appointment as an adjunct lecturer rather than an adjunct professor where her administrative charge and complaint narrative indicated her adjunct faculty position was downgraded, but it did not distinguish between being appointed an adjunct lecturer versus an adjunct professor).

---

[1] The government suggests that the action Alabi alludes to is not issuance of the LOW, but his reassignment to another unit in 2014. *See* Resp. Br. at 15. But if the government is correct, Alabi's reassignment occurred after he filed his EEO charge, and thus it was beyond the scope of the administrative investigation.

"'Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.'" *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). If Alabi wished to pursue race and national origin claims based on the photos of apes taken with his phone, he was obliged to allege that discrete incident of discriminatory conduct in his EEO charge—which he did—and plead those facts as the basis for his race and national origin claims in his amended complaint—which he did not. Instead, he predicated his race and national origin claims on disparate treatment of other employees.

Alabi insists his EEO charge contains the general basis for his federal claims and we should also consider his allegations made during the course of the administrative investigation. But he was required to exhaust each discrete act underlying his claims. *See id.* Further, we have "held, time and again, that the reasonable and likely scope of the investigation is determined by the allegations contained in the [EEO] Charge itself, rather than in the Charge and any responsive documents." *Sanderson v. Wyo. Highway Patrol*, 976 F.3d 1164, 1170 (10th Cir. 2020) (internal quotation marks omitted). Again, if Alabi wished to pursue his claims in Counts III through IX, he was obliged to allege the discrete acts forming the basis of his claims in his EEO charge. Alabi protests that he attempted to amend his EEO charge to add his claims but the administrative judge repeatedly denied his

8

requests. Yet he waited until after the investigation was complete to seek amendment, and because the factual basis for his claims differed from the allegations in his charge, the conduct underlying his claims exceeded the scope of the investigation. Under these circumstances, the district court correctly determined that Counts III through IX were unexhausted.

### B. Summary Judgment

We turn then to the district court's summary judgment rulings, which we review "de novo, applying the same standards as the district court," *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[2] "[I]f the plaintiff fails to provide sufficient evidence supporting a necessary element of his claim, the movant is entitled to

---

[2] Alabi takes issue with some of the district court's recitation of the facts, including the date of the conference call and who wrote the LOW. But these details have no effect on the outcome and thus will not preclude summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Alabi also contends the LOW was rescinded in December 2013, not on July 30, 2013, as the district court indicated. The record confirms, however, that Arthur Gonzales rescinded the LOW on July 30, 2013, R. at 230, as memorialized in a letter he wrote to Alabi in December 2013, R. at 237.

9

summary judgment as a matter of law." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1250 (10th Cir. 2021).

### 1. Count I: Retaliation Based on the LOW

Alabi contends the district court erred in granting summary judgment on his retaliation claim based on the LOW. To establish a prima facie case of retaliation, a plaintiff must show "(1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection exists between the protected activity and the materially adverse action." *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (internal quotation marks omitted). The district court concluded that Alabi failed to satisfy the second element because the LOW was not a materially adverse employment action. We agree.

To constitute materially adverse employment action, "an action must be sufficient to 'dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012) (brackets omitted) (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)). "Disciplinary proceedings, such as warning letters and reprimands, can constitute an adverse employment action." *Medina v. Income Support Div., N.M.*, 413 F.3d 1131, 1137 (10th Cir. 2005). However, the action must produce an "injury rising to a level of seriousness." *Daniels*, 701 F.3d at 638 (internal quotation marks omitted). This "standard is sensitive to the particular circumstances of each case," but "it prescribes an objective inquiry that does not turn on a plaintiff's

10

personal feelings." *Semsroth v. City of Wichita*, 555 F.3d 1182, 1184 (10th Cir. 2009). The plaintiff must show "objective evidence of material disadvantage." *Id.* at 1185.

There is no evidence that Alabi experienced any serious injury or material disadvantage from the LOW. It admonished him for rude behavior during the conference call and stated he could face disciplinary action if he failed to comply with its expectations—exercising civility. But it also stated that it was confidential and would be retained in a temporary file for one year. Gonzales confirmed that "LOW[]s are not disciplinary and therefore are never placed into an Employee's Official Personnel File." R. at 237. He explained that "LOWs are only maintained in a supervisor's working folder" and that he rescinded the LOW eleven days after it was issued. *Id.* Under these circumstances, the LOW was not a materially adverse employment action.

### 2. Count II: Hostile Work Environment

We next consider Alabi's hostile work environment claim. "Title VII proscribes . . . employment practices that permeate the workplace with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1138 (10th Cir. 2008) (internal quotation marks omitted). Thus, a Title VII plaintiff may assert "claims of a hostile work environment based on race or national origin discrimination." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation

11

marks omitted); *see also* 42 U.S.C. § 2000e-2(m) (stating that impermissible consideration of race, color, or national origin need only be "a motivating factor"). However, "run-of-the-mill boorish, juvenile, or annoying behavior . . . is not the stuff of a Title VII hostile work environment claim." *Hernandez,* 684 F.3d at 957 (internal quotation marks omitted). A plaintiff must establish both subjective and objective prongs—that "the plaintiff was offended by the work environment and [that] a reasonable person would likewise be offended." *Id.* (internal quotation marks omitted).

Alabi predicated his hostile work environment claim on his allegations that Ganley wrongly issued the LOW based on lies and that someone had taken photos of apes with his phone, affixed chewing gum on his car, and tampered with his lunch bag. He also alleged that he was harassed by a white coworker at his cubicle, that he was refused a job reassignment, that a "White lady" harassed him with racial undertones, R. at 27, that his responsibilities were reduced, that he was given a low performance rating, and that he was intentionally denied promotional opportunities. The district court considered all of these allegations to assess whether Alabi could establish a hostile work environment. *See Morgan*, 536 U.S. at 105 (holding that acts constituting a hostile work environment may be considered, even if they occur outside the statutory period for filing an EEO charge, so long as an act contributing to the alleged hostile work environment occurs during the statutory period). But the court concluded that Alabi's evidence failed to show pervasive harassment and discrimination. We agree.

12

The district court correctly recognized there is no evidence of a discriminatory animus underlying most of Alabi's allegations, including the issuance of the LOW, the chewing gum on his car, and the tampering of his lunch bag. Likewise, the court noted there is no evidence of a discriminatory animus by the coworker at his cubicle; instead, the record indicates that Alabi complained when a coworker spontaneously looked into his cubicle as she walked by, and the two employees attempted to resolve the matter by talking. *See* Suppl. R. at 62. Alabi further alleged that he was denied a job reassignment, but rather than suggest some discriminatory motive, the emails he cites merely reflect a delay in processing his reassignment. *See* R. at 99; Suppl. R. at 54. Additionally, Alabi claimed that Ganley reduced his job responsibilities, but he cites only an email from her indicating his duties had changed, with no suggestion of a discriminatory intent. *See* Suppl. R. at 42. He also alleged that he received low performance ratings, but the performance appraisal he relies on indicates that he was "[f]ully [s]uccessful," again, with no suggestion of a discriminatory animus. *Id.* at 48. And although Alabi insists he received diminished promotional opportunities as a result of the LOW, there is no evidence that he received either the LOW or fewer promotional opportunities because of any discriminatory animus.

In addition to the foregoing allegations, Alabi averred that on July 28, 2013, someone took photos of apes with his phone and that on August 1, 2012, a "White lady" harassed him with racial undertones, R. at 27. The record indicates Alabi complained to Ganley about the latter incident, writing that a woman had not responded to his emails and when he approached her she told him that she could not

13

"take instruction from [a] black man." Suppl. R. at 49 (internal quotation marks omitted). The district court concluded that while these two incidents were tainted with discriminatory animus, they were not sufficiently pervasive as to establish a hostile work environment. Indeed, our cases require "a steady barrage of opprobrious racial comments." *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (internal quotation marks omitted). "A plaintiff cannot meet [his] burden by demonstrating a few isolated incidents of racial enmity or sporadic racial slurs." *Id.* (internal quotation marks omitted). We have held that two comments failed to meet the standard. *See id.* And we recently observed that four incidents of "problematic conduct" over three years, and five incidents of offensive comments over sixteen months, was insufficient to raise a triable issue of pervasiveness. *See Throupe*, 988 F.3d at 1255 (analyzing Title IX claims under rubric of Title VII). The two incidents Alabi identifies here similarly fall "short of the steady barrage required for a hostile environment claim." *Chavez*, 397 F.3d at 832.

Citing *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1072 (10th Cir. 1998), Alabi insists that a single incident of physically threatening conduct can suffice to create an abusive work environment. He says that viewing all of the evidence, particularly his claims that he felt threatened because someone tampered with his lunch bag, we should conclude that he satisfied the standard. But *Lockard* is distinguishable on its facts: the female plaintiff was a waitress who was subjected to "filthy comments . . . such as 'I would like to get into your pants'" made by two male customers. *Id.* (internal quotation marks omitted). One night, one of the men "pulled her hair, then

14

grabbed her breast and placed his mouth on it." *Id.* As a result of the assault, the plaintiff's emotional state deteriorated so much that she feared going out in public. *Id.* The facts here are not as extreme as the conduct we confronted in *Lockard*.

## III

Accordingly, the judgment of the district court is affirmed.

Entered for the Court

Mary Beck Briscoe
Circuit Judge