BRISCOE, Circuit Judge,
concurring:
I concur in the judgment but write separately to address the issue of Grundy’s disqualification, as it relates to LaVallee and Schultz, in greater detail.
I.
Grundy’s relationship with the defendants was first brought to the attention of the district court in July 2001, when defendant Gall, who was later acquitted, filed a motion to suppress statements he gave to FBI agents and prosecutors during the pre-indictment investigation.[1] In support of his motion, Gall argued that he was confused and/or misled by Grundy regarding his right to legal representation at the time he gave the statements to the FBI agents and prosecutors. The district court held an evidentiary hearing on Gall’s motion on September 25, 2001. ROA, Vol. X. Upon being called by Gall’s defense counsel, Grundy first testified generally about her duties at USP-Florence in 1999. According to Grundy, in early 1999 she “was the supervisory attorney with responsibilities for providing legal services to” employees “of the facilities at Florence” “[i]n connection with their jobs....” Id. at 93. With respect to correctional officers who were sued by inmates alleging abuse, Grundy testified that she would “assist the staff member, if they requested] representation by the Department of Justice, in obtaining representation or making the request itself----” Id. In doing so, she would “ask them” for their version of “what happened.” Id. Then, “[i]f representation [wa]s granted,” she would “assist the United States attorney’s office ... in providing the defense to the civil suit of that particular employee.” Id. Grundy then testified about her dealings with defendant Gall. In 1997, Grundy was contacted by either the FBI or an attorney from the DOJ’s Civil Rights Division staff and informed that they “would be looking to interview certain correctional officer witnesses.... ” Id. at 126. Grundy was further informed that, other than being criminal in nature, she could not be told the nature of the investigation being conducted. Id. at 128. In March 1999, and again in July 1999, Grundy was asked by investigators to arrange interviews for them with defendant Gall. Id. at 129. In arranging those interviews, Grundy informed Gall that DOJ lawyers and FBI agents were interested in speaking with him, id., and that he was free to speak or not speak with them. Id. at 130. Grundy further informed Gall that she “could not help him with” the interviews and that she “wasn’t going in there.” Id. at 131. According to Grundy, Gall did not ask her to arrange legal or union representation for him. Id. at 131-32. The district court ultimately denied Gall’s motion. Id. at 236.
Approximately nineteen months later, on April 21, 2003 (the tenth day of trial), all of the defendants filed a joint motion to disqualify Grundy for violating Colorado Rules of Professional Conduct 1.6(a), 1.9, and 1.11(b) and (e). ROA, Vol. V, Doc. *710 1080. In their motion, defendants alleged that Grundy, who by that time was working as an assistant general counsel for-the BOP nationally, provided prior representation to them in several respects. In particular, defendants alleged that while they were employed as correctional- officers at USP-Florence, various civil actions were filed against them by inmates, and that Grundy acted as their legal counsel in connection with these actions. Id. at 2-3. One such civil action was filed by inmate William Turner and concerned the same alleged conduct that was listed as one - of the overt .acts in Count I of the superseding indictment, and that formed the basis for Count VIII of the superseding indictment (the jury acquitted defendants La-Vallee, Schultz, and Bond on this latter count). In turn, defendants alleged that Grundy played two roles in the prosecution of the case against them. First, defendants alleged that Grundy “provided ‘liaison’ coordination between the BOP and the United States Attorney’s Office prosecuting this action until sometime prior to April 1, 2002 as a BOP employee.” Id. Second, defendants alleged that “Grundy became a contract attorney for the United States Attorney prosecuting th[e] matter before the commencement of th[e] trial.” Id. “In that role,” defendants alleged, “Grundy participated in witness interviews with the witnesses to be called by the prosecution....” Id. Based upon these allegations, defendants alleged that “a conflict of interest exist[ed] and [that],” pursuant to the Colorado Rules of Professional Conduct cited in their motion, “Grundy’s representation of the United States in this matter require[d] her disqualification.” Id.
Upon receiving the motion, the district court asked the lead prosecutor to explain Grundy’s “role in th[e] case.” ROA, Vol. LVI, at 2195. The lead prosecutor explained that Grundy
ha[d] been - assigned by the [BOP] to assist and manage witnesses and just general management of the trial and act as liaison to the prosecution team in order to make sure we get people in and out at the right times and assist with travel and documents and basically logistics for the most part. She is not hired by the U.S. Attorney’s office. She is not a special assistant U.S. attorney.
Id. at 2195-96. In addition, the lead prosecutor stated that Grundy “was a general counsel or assistant general counsel for the [BOP]” and “d[id]n’t represent the defendants.” Id. at 2196. The district court stated it was “tempted to summarily deny th[e motion] as late,” but would instead first give the government a chance to respond in writing. Id.
On April 28, 2003, the government filed its written response to defendants’ motion to disqualify Grundy. Id., Vol. V, Doc. 1120. Therein, the government asserted that Grundy “[wa]s not a contract attorney for the United States Attorney prosecuting the case at bar,” but rather was “Counsel for the [BOP] and ha[d] been facilitating the appearance of [BOP] staff at th[e] trial.” Id. at 1. “As such,” the government argued, Grundy’s “presence in the court c[ould not] be equated with the representation of the United States in the prosecution of th[e] case.” Id. Further, the government argued that “[i]n her role as Counsel for the [BOP],” Grundy “represented the [BOP] and not the employees of her agency.” Id. at 2. Although the government acknowledged that Grundy acted as “a conduit through which [prison] employees obtained representation from the U.S. Department of Justice and United States Attorney’s Office for civil suits filed against them in their official capacities,” it asserted that such actions were “insufficient to create an attorney-client relationship” with the individual prison employees *711 she assisted. Id. Relatedly, the government asserted that defense counsel were “already aware that civil attorneys from the U.S. Department of Justice and/or the United States Attorney’s Office represented their clients in the various suits filed against them by inmates as they ha[d] already moved for notes and. statements provided to these attorneys by their clients.” Id. at 3. Lastly, the government asserted that “Grundy [wa]s not going to be called as a witness for the government” at trial. Id.
On April 28, 2003 (the same day the government filed its written response), the district court orally denied defendants’ motion to disqualify Ms. Grundy. ROA, Vol. LX, at 3212. In doing so, the district court simply stated: “I find it to be utterly without merit.” [2] Id.
II.
In their opening appellate briefs, LaVal-lee and Schultz contend that the inclusion of Jenifer Grundy on the prosecution team was a clear conflict of interest. (LaVal-lee’s Br. at 2, issue 3; and Schultz’s Br. at 42, issue 5.) Both LaVallee and Schultz have incorporated by reference the discussion of the Grundy issue contained in Ver-bickas’ opening appellate brief. Verbickas’ brief, in turn, repeatedly emphasizes that each of the defendants, including LaVallee and Schultz, had an attorney-client relationship with Grundy. In particular, Ver-bickas’ brief states:
• “The [district] court was made aware of the conflict presented by Grundy’s representation of Pruyne, LaVallee, Schultz and Bond at the hearing held on July 11, 2001.” Verbickas’ Br. at 28 (emphasis added).
• “Grundy had an attorney-client relationship with the Defendants because of her position as legal counsel to the USP Florence employees. During the investigation of this case, all Defendants worked as correctional officers at USP Florence. As a result of their employment, numerous civil actions were filed by inmates alleging some of the Defendants violated their civil rights, including: Turner v. Schultz, et al., 99-WM-2232.... These civil action’s alleged so-called ‘Bivens’ violations against the Defendants and other correctional officers. LaVallee, Schultz and Bond, three co-defendants in this trial, were named as Defendants in Turner.” Id. at 31 (emphasis added).
• “Grundy represented Pruyne and these Defendants regarding their requests for DOJ representation. She entered into an attorney-client relationship with Defendants and gathered relevant information regarding their requests to be afforded DO,J legal representation in these civil actions.” Id. at 32 (emphasis added).
• “Grundy’s relationship with the Defendants proved there were attorney-client relationships that subjected her to the ethical obligation of preserving confidential communications.” Id. at 38 (emphasis added).
• “The Defendants looked to Grundy as their lawyer.” Id. at 38 (emphasis added).
• “Grundy advised Defendants.” Id. at 39 (emphasis added).
• “Grundy’s prior relationship with the Defendants constitutes actual impropriety under Colorado law.” Id. at 42.
In sum, the allegations in Verbickas’ brief are sufficiently detailed to suggest the dis *712 trict court erred in denying LaVallee’s and Schultz’s motion to disqualify Grundy.
HI.
We “review a district court’s decision on a motion to disqualify counsel for abuse of discretion.” Chavez v. New Mexico, 397 F.3d 826, 839 (10th Cir.2005); see United States v. Bolton, 905 F.2d 319, 321 (10th Cir.1990) (same).. “The merits of [a] disqualification motion depend on whether a substantial relationship exists between the pending suit and the matter in which the challenged attorney previously represented the client.” Bolton, 905 F.2d at 321 (internal quotation marks omitted).
In reviewing the district court’s ruling, the threshold question is whether an attorney-client relationship existed between Grundy and either LaVallee or Schultz. According to defendants’ motion, a USP-Florence inmate named William Turner filed a federal civil action against LaVallee and Schultz (as well as defendant Bond) asserting they violated his constitutional rights by physically abusing him. Although it is not entirely clear from the record, it appears that LaVallee and Schultz sought and received representation from the Department of Justice with respect to this civil action and, in doing so, worked at least initially with Grundy. Based upon the testimony Grundy gave during the evidentiary hearing on defendant Gall’s motion, it appears that she would have interviewed LaVallee and Schultz in order to obtain their version of events and, in turn, would have assisted them in obtaining representation from other DOJ attorneys. As the supervisory attorney at USP-Florence, Grundy followed this general procedure when a USP-Florence employee sought DOJ representation after being sued by an inmate. Assuming these facts are true (the government has never seriously disputed these facts), it appears that an attorney-client relationship did, in fact, exist between Grundy and these two defendants. According to 28 C.F.R. § 50.15(a)(3), “[a]ttor-neys employed by any component of the Department of Justice who participate in any process utilized for the purpose of determining whether the [DOJ] should provide representation to a federal employee, undertake a full and traditional attorney-client relationship with the employee, with respect to application of the attorney-client privilege.” This provision would clearly encompass Grundy, since she allegedly “participate^] in [the] process utilized” by the DOJ' for determining whether 'it would provide representation to USP-Florence employees.
Assuming, then, that Grundy had an attorney-client relationship with LaVallee and Schultz regarding the William Turner lawsuit, the question then becomes whether, pursuant to the Colorado Rules of Professional Conduct cited by defendants in their original motion, that relationship barred. Grundy from acting as, a “liaison” to the DOJ attorneys prosecuting the defendants.
Defendants first cited to Rule 1.6(a), entitled Confidentiality of Information, which states:
A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c).
Applying that rule to the circumstances here, there is no evidence, and no express assertion by defendants, that Grundy revealed to the prosecution team any information that was provided to her by LaVal-lee or Schultz in connection with the civil suit filed against them by inmate Turner. Nor does it appear to be a reasonable *713 assumption that, by simply coordinating BOP witnesses for the prosecution team, Grundy necessarily would have disclosed any such information. Thus, there is no basis for concluding that Grundy’s role as “liaison” to the prosecution team resulted in a violation of Rule 1.6(a).
The second rule cited by defendants was Rule 1.9(a), entitled Conflict of Interest: Former Client, which states:
A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person’s interests are materially adverse to the interests of the former client unless the former client consents after consultation.
Applying that rule to the circumstances present here, it appears, for the reasons already discussed, that Grundy likely had an attorney-client relationship with LaVal-lee and Schultz in connection with the civil lawsuit filed by inmate Turner. Further, as noted, that civil lawsuit was apparently based upon some of the same allegations of abuse as set forth in the superseding indictment. Thus, Rule 1.9(a) would have prohibited Grundy from representing any interests that were adverse to defendants LaVallee and Schultz. Based upon the information contained in the government’s response to defendants’ motion to disqualify Grundy, however, there is no indication that she ever acted as government counsel in these criminal proceedings. In other words, although defendants have characterized Grundy as a “member of the prosecution team,” it appears that she, in fact, simply helped to coordinate BOP'witnesses for the DOJ attorneys who represented the government in this case, and otherwise played no role in the investigation or prosecution of the charges against defendants. Thus, Rule 1.9(a) was not violated.[3]
Finally, defendants cited Rule 1.11, entitled Successive Government and Private Employment, which states, in pertinent part:
(b) Except as law may otherwise expressly permit, a lawyer having information that the lawyer knows is confidential government information about a person acquired when the lawyer was a public officer or employee, may not represent a private client whose interests are adverse to that person in a matter in which the information could be used to the material disadvantage of that person. A firm with which that lawyer is associated may undertake or continue representation in the matter only if the disqualified lawyer is screened from any participation in the matter and is apportioned no part of the fee therefrom.
* * *
(e) As used in this Rule, the term “confidential government information” means information which has been obtained under governmental authority and which, at the time this rule is applied, the government is prohibited from disclosing to the public or has a legal privilege not to disclose, and which is not otherwise available to the public.
Clearly, this rule has no application here, since Grundy has continuously worked for *714 the BOP and has never worked in private practice representing a private client.
In sum, I conclude there was no merit to defendants’ motion to disqualify Grundy, and thus the district court did not abuse its discretion in denying that motion.

. Defendant Pruyne filed a similar motion, but ultimately withdrew it. ROA, Vol. X, at 142.

. The government, in its appellate brief, asserts the district court denied the motion as untimely. That assertion, however, is not supported by the record.

. Even assuming, for purposes of argument, that Grundy could have been considered a member of the prosecution team, any resulting violation of Rule 1.9(a) was harmless. In particular, the jury acquitted defendants La-Vallee and Schultz of the substantive charge that alleged the beating of inmate William Turner. Further, LaVallee’s and Schultz’s conspiracy convictions rested upon their role in beating inmate Pedro Castillo and then concealing evidence of that beating.