**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

BRYAN MCELROY,

      Plaintiff - Appellant,

v.

AMERICAN FAMILY INSURANCE,
a/k/a American Family Insurance Group,

      Defendant - Appellee.

No. 14-4134
(D.C. No. 2:12-CV-01132-TS)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HOLMES**, and **MORITZ**, Circuit Judges.
_____

Bryan McElroy appeals the district court's decision granting American Family

Insurance's motion for summary judgment on his hostile work environment and

retaliation claims. Because we conclude that no genuine issues of material fact

remain as to either of McElroy's claims and that American Family is entitled to

judgment as a matter of law, we affirm the district court's ruling.

**BACKGROUND**

Bryan McElroy admits that after working for American Family Insurance

(AFI) for more than a decade, he "was having a 'bad year' in 2011." Aplt. Br. at 27.

_____

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Although McElroy attributes many of his 2011 performance issues to the actions of his supervisor, Tony Grilz, he doesn't dispute that he repeatedly failed to meet the goals Grilz set for him that year. Nor does he dispute that Grilz disciplined him in May 2011 for engaging in behavior Grilz viewed as insubordinate. Nevertheless, McElroy denies these issues led Grilz to terminate his employment on October 28, 2011. Instead, McElroy insists the events that precipitated his termination began much earlier when, in 2008, Grilz told McElroy that Grilz wanted someone younger and more moldable to serve as District Sales Manager.

That same year, McElroy alleges, Grilz began a pattern of inappropriate behavior: Grilz complimented McElroy's appearance, clothing, and cologne; touched McElroy's back and buttocks, ostensibly to illustrate the location of Grilz's back pain; instructed McElroy to participate in two body-fat contests during which he required McElroy to wear a speedo, complimented McElroy's appearance, and tried to touch his buttocks; repeatedly asked McElroy to join him for drinks during a company event; and required McElroy—who is Catholic—to work a Sunday event because AFI's Mormon employees could not.

On April 22, 2011, McElroy made an anonymous phone call to AFI's internal ethics hotline, alleging Grilz was discriminating against him on the basis of religion and age. Six months and several performance-related discussions later, Grilz terminated McElroy's employment, allegedly in retaliation for McElroy's phone call to the ethics hotline and an additional complaint to "a company Human Resources manager." Compl., Doc. 2, ¶ 106.

2

In response to his termination, McElroy filed a charge with the Equal Employment Opportunity Commission and later filed suit in federal district court under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act (ADEA) of 1967. Among other claims, McElroy alleged (1) a hostile work environment based on sexual harassment and (2) retaliation.[1] Following discovery, AFI moved for summary judgment on all of McElroy's claims.

In rejecting McElroy's hostile work environment claim, the district court acknowledged that "some of Grilz's conduct could make many people uncomfortable." Order, Doc. 26, at 22. Nevertheless, it concluded the conduct didn't "rise to the level of being so objectively offensive that it created a hostile or abusive work environment." *Id.* In rejecting McElroy's retaliation claim, the district court relied in part on the six-month period that elapsed between McElroy's anonymous call to the ethics hotline and his termination. The court concluded that absent any other evidence of causation, McElroy failed to demonstrate a causal connection between the two events.

The district court granted summary judgment in favor of AFI. McElroy appeals.

---

[1] The district court granted AFI's motion for summary judgment on all seven causes of action asserted in McElroy's complaint. Because McElroy appeals only from the district court's grant of summary judgment on his hostile work environment and retaliation claims, we confine our discussion to these issues.

**DISCUSSION**

We review the district court's grant of summary judgment de novo. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). We view the facts and evidence in the light most favorable to McElroy. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**I.    The district court properly granted summary judgment on McElroy's hostile work environment claim.**

To succeed on a hostile work environment claim, a plaintiff must show "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Morris v. City of Colorado Springs*, 666 F.3d 654, 664 (10th Cir. 2012) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 851 (10th Cir. 2007)).

McElroy challenges the district court's decision granting summary judgment on his hostile work environment claim on two fronts. First, he suggests that only juries—not district courts—are properly equipped to determine what is objectively offensive in this context.

We find this argument puzzling in light of McElroy's apparent concession that "in deciding motions for summary judgment relating to claims alleging hostile work environment[s], the trial court has to be the entity . . . to draw the line between

4

occasionally rude or sporadically mean supervisory actions and actions severe or pervasive enough that they cross over the line and create actionable harassment." Aplt. Br. at 15.

Nevertheless, it's true we have generally recognized that "[t]he severity and pervasiveness evaluation [of a hostile work environment claim] is particularly unsuited for summary judgment because it is quintessentially a question of fact." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 958 (10th Cir. 2012) (second alteration in original) (quoting *O'Shea v. Yellow Tech. Servs., Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999)). But we also often have affirmed the resolution of this issue at the summary judgment stage. *See, e.g.*, *Morris*, 666 F.3d at 658, 666, 669 (affirming district court's conclusion that conduct was insufficiently severe or pervasive to alter terms of plaintiffs' employment); *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (same).

In support of his argument that the severity-and-pervasiveness analysis is an inappropriate basis for granting summary judgment, McElroy relies solely on *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117 (10th Cir. 2003). There, we explained that "ascertaining whether [an] impairment substantially limits [a] major life activity" for purposes of a claim under the Americans with Disabilities Act "is a factual question for the jury." *Id.* at 1129.

Yet despite acknowledging this question is best left to juries, we reiterated that "in proper circumstances," courts can nevertheless "decide this step on a motion for summary judgment." *Id.* at 1130 n.5. We then proceeded to affirm the district court,

5

which had done just that. *Id.* at 1121, 1130-31. Thus, if anything, *Doebele* stands for the proposition that district courts may grant summary judgment on the basis of factual questions when, "as a matter of law," a plaintiff's evidence is insufficient to create a question of fact. *Id.* at 1130. Because the only authority McElroy cites to support his argument directly contradicts the proposition for which he cites it, his argument fails.

Next, McElroy insists that the district court's finding that "some of Grilz's conduct could make many people uncomfortable," Order, Doc. 26, at 22, leads to the inescapable conclusion that a jury could necessarily find Grilz's behavior sufficiently offensive to support a hostile work environment claim. But McElroy cites no authority suggesting that behavior capable of causing mere discomfort is necessarily capable of "alter[ing] the conditions of [a] victim's employment and creat[ing] an abusive working environment." *Morris*, 666 F.3d at 664 (quoting *Hall*, 476 F.3d at 851). On the contrary, we've warned that "even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard." *Id.* (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008)). The district court's acknowledgment that Grilz's conduct could make many people uncomfortable doesn't compel the conclusion that a jury could find that conduct severe enough to support McElroy's allegations of a hostile work environment. Accordingly, we affirm the district court's grant of summary judgment on McElroy's hostile work environment claim.

6

**II.    The district court properly granted summary judgment on McElroy's retaliation claim.**

To make a prima facie case for retaliation under either Title VII or the ADEA, McElroy must establish (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 638 (10th Cir. 2012). In granting summary judgment on McElroy's retaliation claim, the district court relied on McElroy's failure to offer sufficient evidence of a causal connection.

On appeal, McElroy concedes the six-month gap between his anonymous phone call to the ethics hotline (the protected conduct) and his termination (the adverse employment action) was too long to support an inference of causation. But he insists much less time elapsed between *other* protected conduct—his complaints to AFI employees John Thedinga[2] and Christy Ledgerwood—and *other* adverse employment action: what he describes as "Grilz'[s] effort to build a case against [him]." Aplt. Br. at 21.

To succeed on this argument, McElroy must first establish his complaints to Thedinga and Ledgerwood constituted protected conduct. For our purposes, opposition to an employer's conduct is only "protected" if it opposes a practice made unlawful by Title VII or the ADEA. *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d

---

[2] Although McElroy's brief refers to "John Thedinger," Aplt. Br. at 21, McElroy's appendix refers to "John Thedinga," *see, e.g.*, Aplt. App. at 26-43. We adopt that spelling here.

1187, 1203 (10th Cir. 2008); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002). But McElroy's brief doesn't tell us what he said to Ledgerwood or when he said it. Without such information, we can't determine whether the complaint was protected, much less its proximity to any adverse employment action. Thus, McElroy hasn't established the district court erred in failing to consider the complaint he made to Ledgerwood in evaluating causation.

McElroy's argument regarding his conversation with Thedinga fails for similar reasons. While McElroy asserts he told Thedinga that Grilz's behavior towards him was "discriminatory," Aplt. Br. at 19, he admits he never mentioned gender, religion, or age during that conversation. Absent some indication McElroy told Thedinga that Grilz discriminated against him on the basis of a characteristic listed in Title VII or the ADEA, McElroy fails to establish his comment to Thedinga was protected. *See Hinds*, 523 F.3d at 1203 ("Although no magic words are required, to qualify as protected opposition the employee must convey to the employer his or her concern that the employer has engaged in a practice made unlawful by the ADEA."); *Petersen*, 301 F.3d at 1188 ("Opposition to an employer's conduct is protected by § 2000e-3(a) only if it is opposition to a 'practice made an unlawful employment practice by [Title VII].'"). In any event, McElroy's brief also fails to indicate *when* he made the allegedly protected comment to Thedinga. Thus, even if we agreed the comment was protected, we'd be unable to determine its proximity to any adverse employment action or make any inference of causation.

8

So we're left with only one possible instance of protected opposition: McElroy's anonymous phone call to AFI's ethics hotline. Notably, McElroy acknowledges that his placement of an anonymous call generates an issue as to causation. *See* Aplt. Br. at 19 n.4 (recognizing that anonymity of call "goes not to the issue of whether [McElroy] engaged in protected activity, but whether he can establish a causal connection"). As McElroy further acknowledges, if Grilz didn't know McElroy called the ethics hotline, Grilz couldn't have terminated McElroy's employment[3] *because* McElroy called the ethics hotline. *See Peterson*, 301 F.3d at 1188 (noting 42 U.S.C. § 2000e-3(a) only prohibits an employer from retaliating "because" an employee engaged in protected conduct, and reasoning, "An employer's action against an employee cannot be *because* of that employee's protected opposition unless the employer *knows* the employee has engaged in protected opposition" (quoting § 2000e-3(a)) (second emphasis added)); *see also* 29 U.S.C. § 623(d) (prohibiting employers from discriminating "because" an individual "has opposed any practice made unlawful by" ADEA).

McElroy's concession that his phone call "remained anonymous," Aplt. Br. at 19 n.4, is fatal to his retaliation claim. *See Peterson*, 301 F.3d at 1189 (explaining plaintiff's failure to provide evidence establishing employer retaliated against her *because* of plaintiff's protected conduct "would in itself require judgment against her"). Thus, we need not address McElroy's other arguments challenging the district

---

[3] Because McElroy fails to establish Grilz knew of McElroy's protected conduct, we need not address McElroy's argument that he provided evidence of an earlier adverse employment action.

9

court's decision to grant summary judgment on his retaliation claim. Even assuming the district court somehow erred, McElroy's failure to establish Grilz was aware of McElroy's phone call to the ethics hotline would require us to affirm.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of AFI.

Entered for the Court


Nancy L. Moritz
Circuit Judge