**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 2 2003**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

TERRI L. SCARBERRY,

      Plaintiff-Appellant,

v.

EXXONMOBIL OIL
CORPORATION,

      Defendant-Appellee.

No. 02-6105

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CIV-01-597-L)

---

Submitted on the briefs: [*]

Ronald A. Schaulat, Stephanie A. Marston, of Brady, Schaulat & Falsetti, Oklahoma City, Oklahoma, for Plaintiff-Appellant.

William Wells of Lee, Freedman & Wells, P.C., Oklahoma City, Oklahoma, for Defendant-Appellee.

---

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

**LUCERO** , Circuit Judge.

---

[*]  The case is unanimously ordered submitted without oral argument pursuant to Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G).

Terri L. Scarberry appeals from an order granting summary judgment in favor of ExxonMobil Oil Corporation ("ExxonMobil") on her action brought pursuant to Section 703 of Title VII. Her suit alleges sexual harassment by co-workers, resulting in a hostile work environment, and that ExxonMobil failed to take corrective action reasonably calculated to end the harassment. We conclude that ExxonMobil has demonstrated that it promptly investigated and took progressively more serious remedial action that not only ended harassment by specific employees, but was also reasonably calculated to demonstrate to all employees that its policy against sexual harassment would be enforced. See Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 676 (10th Cir. 1998) (affirming summary judgment in favor of employer where record demonstrated prompt, proportional response to harassing incidents). Thus, exercising jurisdiction under 28 U.S.C. § 1291, we conclude that summary judgement in favor of ExxonMobil was proper, and affirm.

## I

We review a grant of summary judgment de novo, applying the same standard as the district court under Fed. R. Civ. P. 56(c); Adler, 144 F.3d at 670–71. "Summary judgment is proper if the movant demonstrates that there is no genuine issue as to any material fact and that it is entitled to a judgment as a matter of law. In applying this standard, we view the factual record and draw all

reasonable inferences therefrom most favorably to the nonmovant." Adler, 144 F.3d at 670 (quotations omitted).

Scarberry asserts that it is usually inappropriate to grant summary judgment in employment law cases because those cases often turn upon the intent of the employer to discriminate. Here, however, where the issue is not whether ExxonMobil or its management directly harassed or retaliated against Scarberry but rather, whether ExxonMobil was negligent in allowing co-employees to sexually harass her after she informed management of the harassment, the issue of intent to discriminate is not implicated. See 29 C.F.R. § 1604.11(d) (providing that, "[w]ith respect to conduct between fellow employees, an employer is responsible for acts of sexual harassment in the workplace where the employer . . . knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action"). In such cases, the court may simply examine the record, including the undisputed evidence, to determine whether ExxonMobil's responses to claims of sexual harassment were reasonable as a matter of law. See Adler, 144 F.3d at 676.

**II**

Scarberry claims that several acts of sexual harassment occurring at the ExxonMobil plant where she was employed support a conclusion that ExxonMobil should be held liable for allowing harassment to continue. Her alleged harassers

are identified as Roger Reynolds, Terry Simpson, Kenneth Sapp, and Arlin Stout, who are all co-workers. Scarberry concedes that ExxonMobil took action involving the harassing acts, but she argues that there are genuine issues of material fact as to whether its action was sufficiently prompt and adequate to relieve ExxonMobil of liability as a matter of law. We discuss each incident of alleged harassment below.

## A. Graffiti.

Scarberry's first argument centers on ExxonMobil's responses to incidents of sexually demeaning graffiti referring to Scarberry and another female employee. The first incident involved graffiti referring to Scarberry on a large spool used as a table in a break area and was discovered July 9, 2000. Three weeks later, on August 2, someone spray-painted several demeaning statements about both women on the walls of the plant during the night.

### 1. Response to table graffiti.

Scarberry claims that, because Mr. Johnson (the human resources manager) did not come into work on July 9, his day off, to personally view the table, and because the investigation of the graffiti incidents spanned three months before the suspected perpetrator was fired, a jury could conclude that ExxonMobil's investigation was not prompt or adequate.

We disagree. Scarberry fails to mention the undisputed facts that, on July 10, Johnson (1) personally viewed the graffiti; (2) took pictures of the graffiti so that he could investigate the handwriting; (3) authorized the graffiti's immediate removal; (4) began interviewing employees and security guards to determine who could be a suspect; and (5) began interviewing employees who had been targeted as suspects. During the following weeks, he also (6) collected numerous writing samples from the suspects' employee records and compared them with the graffiti; (7) reviewed the plant's security system surveillance tapes; (8) reviewed trucking logs of outside contractors who were on the premises during the relevant period; (9) attempted to identify a forensic handwriting expert; (10) contacted headquarters seeking additional assistance; (11) learned that Mr. Gwin, a security adviser, had been assigned to the case from headquarters; and (12) alerted "security to be more aware of potential problems at the plant." (Appellant's App. at 208–24.) The fact that Johnson did not come in on his day off to begin his investigation of the table graffiti does not significantly detract from the promptness of the overall investigation. We conclude that no rational jury could find that the investigation was inadequate and unreasonable under the circumstances. See Adler, 144 F.3d at 673 (noting that an employee seeking to impose liability upon an employer for co-worker-related harassment bears the

-5-

burden of showing that the employer "did not adequately respond to notice of the harassment") (quotation omitted).

## 2. Response to wall graffiti.

ExxonMobil's head of security at the plant called police immediately after the second graffiti incident, and Gwin arrived at the plant within two days. ExxonMobil took pictures of the graffiti and then immediately began removing it. That same evening, Mike Townsend, the operations manager, grouped his section leaders and asked them who they thought could be responsible for the graffiti, and started bringing individuals in for questioning. Significantly, Scarberry was critical of the fact that Townsend's response was so immediate and aggressive, because she felt that her co-employees "alienated" her and "created a very hostile work environment" as a result of managements' response. (Appellant's App. at 60–61.)

Over the following three days, ExxonMobil required all employees to attend meetings in which the plant manager reiterated and demanded compliance with the sexual harassment policy as found in the "Employee Matters Policy." (Id. at 93, 101, 189–90.) In the following weeks, the record shows that, among other things, ExxonMobil beefed up security at the plant, fixed and upgraded lights, surveillance cameras, and fences, and increased the number of security guards. Within eleven days, Gwin had identified employee Terry Simpson's

handwriting exemplars as being similar to the graffiti, noted that he had been on temporary work assignment in proximity to Scarberry and the other woman named in the graffiti, and named him as a suspect. He sent the samples to a handwriting analyst for confirmation, and the analyst returned his report on September 18. The report stated that it was "highly probable" that Simpson was the culprit. ( Id. at 89.) Simpson was terminated on October 3. There were no subsequent incidents involving graffiti. Given these undisputed facts, we conclude that ExxonMobil's response was prompt, adequate, and effective as a matter of law.

## B. Repeat offenders and offenses.

Scarberry next argues that the district court erred because it "ignored the circumstantial . . . evidence that ExxonMobil's so-called 'responses' did not stop either Simpson from being a repeat offender . . . or others from harassing Scarberry even during the graffiti 'investigation.'" (Appellant's Br. at 16); see Adler, 144 F.3d at 676 ("Repeat conduct may show the unreasonableness of prior [employer] responses.").

## 1. Terry Simpson.

In characterizing Simpson as a "repeat offender," Scarberry refers to incidents in January and February 1999, when Simpson and another employee

were accused of unspecified harassing behavior by female employees in

Simpson's department. [1]

---

[1]    Three days after appellant's brief was submitted to this court on June 7, 2002, the Supreme Court issued   Nat'l R.R. Passenger Corp. v. Morgan   , 536 U.S. 101, 122 S. Ct. 2061 (2002).   Morgan  holds that an employee may recover on a hostile work environment theory for acts occurring more than 300 days before an EEOC charge is filed, as long as those acts were part of the same hostile work environment complained of and at least one act occurred within the 300-day period.  536 U.S. at __, 122 S. Ct. at 2074.  "   Morgan  implicitly overruled . . . [previous] Tenth Circuit cases to the extent these cases held that recovery on a Title VII hostile work environment claim is not available for acts taken outside the statutory time period where the plaintiff knew or should have known the conduct was discriminatory when the acts occurred."   Boyler v. Cordant Tech., Inc. , 316 F.3d 1137, 1140 (10th Cir. 2003).  "Where a change in law occurs while a case is on appeal, we apply the law in effect at the time of our decision."   Id. at 1138.

The parties did not bring   Morgan  to our attention, and we note that the district court also had no opportunity to determine whether complaints of harassing acts by Roger Reynolds and Terry Simpson occurring in 1998 and 1999 were relevant as to her hostile work environment claim in light of   Morgan .  But we expressly consider her allegations respecting Simpson in our analysis because she alleges he is a repeat offender.

The claims regarding Mr. Reynolds are a different matter.  Scarberry complained to Johnson in 1998 that Reynolds, a co-worker whose sister-in-law had been married to Scarberry's husband, made sexual innuendoes, touched her, and spent too much non-business time in her department.  She complained in 1999 that Reynolds sexually propositioned her during a business trip.  Because the parties stipulated that Scarberry waited too long to file an EEOC claim regarding his behavior, no evidence was presented regarding ExxonMobil's response other than that he was transferred to another department and the harassment stopped. But we conclude that her allegations respecting Reynolds do not affect either our analysis or our result because it is undisputed that his harassing behavior ended after she reported him and he was transferred to another division, and there is no allegation that Simpson, Sapp, or Stout were aware of Reynold's alleged harassment or of ExxonMobil's response.   See Adler , 144 F.3d at 678 (noting that "[w]ithout evidence of . . . a nexus between a prior response and later harassment
(continued...)

-8-

Simpson denied the allegations, but after an investigation, he was individually counseled regarding inappropriate behavior and company policy regarding harassment. He was also warned that ExxonMobil would not tolerate harassment in the workplace nor retaliation as a result of the investigation. This response was prompt and adequate as a matter of law. See Adler, 144 F.3d at 677 (noting that a reasonable response for first-time harassment may include prompt investigation, warning to refrain from harassing conduct, and warning that future misconduct could result in progressive discipline). The record establishes that the warning discouraged Simpson from openly harassing others, see id. at 676 (noting that a victim may have to suffer repeated harassment while an employer progressively disciplines the perpetrator to determine whether he or she is a "hard head" case who simply never changes), but a company cannot predict when an employee will take another approach to harassment designed to avoid detection and discipline, as Simpson apparently did in this case. The test is whether the employer's response to each incident of harassment is proportional to the incident and reasonably calculated to end the harassment and prevent future harassing behavior. Id. ExxonMobil appropriately responded to each of the incidents involving Simpson, thereby protecting itself against liability for negligence.

---

[1](...continued)
by others, the later harassment is irrelevant to the adequacy of the prior response").

## 2. Kenneth Sapp.

We turn next to Scarberry's claim that ExxonMobil's response to the graffiti incidents was not reasonable because she and others were harassed during ExxonMobil's investigation of the incidents. She first refers to employee Kim Stacy's claim that, on August 11, co-employee Kenneth Sapp pointed a laser light at Stacy's breast and was "staring and leering" at her. (Appellant's App. at 195.) Stacy reported the behavior to her section leader, who apparently dismissed the incident as insignificant. Late that evening, Stacy called a friend who worked at the plant, and the friend reported the incident "through the proper channels" on August 14th. ( Id.) On August 15th, ExxonMobil management interviewed Stacy, her husband (who also worked at the plant), her section leader, and Sapp. Subsequent investigation by Johnson revealed no corroborating witness testimony or evidence despite interviews of nine potential witnesses. ExxonMobil management sent a letter to Stacy on September 1, stating that interviews with other employees could not substantiate her claims, so no "firm discipline" could be recommended for Sapp.    (Id. at 198.) The letter further stated, however, that management had met with Sapp that day, reinforced the company's policies and concerns about harassment, warned him that supervisors would be closely monitoring his behavior, and informed him that he would be disciplined if other

harassing acts could be substantiated and that notes pertaining to the investigation would be maintained on file.

Meanwhile, Scarberry claims, on August 21, Sapp also inappropriately focused the laser pen on her body. She apparently did not report the incident to the plant manager until after September 1, and after discovering through Stacy that no corroborating evidence supported Stacy's claim. Sapp was terminated on September 11, after ExxonMobil received Scarberry's complaint substantiating Stacy's claim.

Scarberry argues that Sapp's harassing behavior towards her raises a genuine issue of material fact regarding whether ExxonMobil's investigation into Stacy's claims was sufficiently prompt and adequate. We disagree. Given the timing of the complaints and ExxonMobil's undisputed attempts at corroborating Stacy's complaints and its subsequent termination of Sapp, we conclude that ExxonMobil's investigation and responses were sufficiently prompt, adequate, and effective at ending Sapp's harassment as a matter of law.

### 3. Arlin Stout.

On September 20, [2] co-employee Arlin Stout walked up to Scarberry's cubicle and showed her a one-page document entitled "Men's Rules for Women." (Id. at 91.) The document contained crass statements, some that were sexually oriented and some that parodied both men and women. As he handed her the document, Stout told her he "thought it was pretty funny" and that she "might want to read it." ( Id. at 77.) Scarberry asked him if she could make a copy of it, to which he responded, "Yes . . . but don't get me in trouble." ( Id.) Scarberry reported the incident to management. It is undisputed that, after an immediate investigation, ExxonMobil suspended Stout for three days without pay, required him to apologize to her in writing and in person, and advised him that any further violations could result in additional discipline, including termination.

In September, after Scarberry filed a complaint with the EEOC, the operations manager of ExxonMobil met with all plant supervisors to discuss Scarberry's claims and ExxonMobil's "expectation to resolve the case and keep others from occurring." ( Id. at 101.) On October 10–12, the operations manager

---

[2] Although Scarberry's affidavit states that the incident involving Stout occurred August 20, at her deposition she stated that it occurred after Sapp was fired, and her brief in support of her response to ExxonMobil's motion for summary judgment also states that the event occurred September 20 . Viewing the record in a light most favorable to Scarberry, we assume for purposes of our analysis that the incident occurred on September 20.

again met with all employees "to reinforce the Company's commitment to the . . . policy [prohibiting harassment]." ( Id.) There were no further complaints of harassment.

We reject Scarberry's argument that the fact that three incidents of harassment occurred after ExxonMobil reinforced its policy prohibiting harassment to all employees on August 3–5 demonstrates a genuine issue of material fact as to whether ExxonMobil's response to the public graffiti incidents was adequate or reasonably calculated to end harassment in the plant. As in Adler, ExxonMobil's "responses utilized all of the measures . . . which the law aims to encourage employers to utilize." 144 F.3d at 677.

Scarberry's citations to Baty v. Willamette Indus., Inc., 172 F.3d 1232 (10th Cir. 1999), and Turnbull v. Topeka State Hosp., 255 F.3d 1238 (10th Cir. 2001), are unavailing because both cases are readily distinguishable on their facts. In Baty, the plaintiff provided evidence of rampant, direct, and repeated sexual harassment by both supervisors and employees lasting over a year. 172 F.3d at 1236–38. The company conducted investigations seven months after the first report of harassment and no employee was ever disciplined in connection with the plaintiff's allegations. Employees testified that they had never seen a policy prohibiting sexual harassment, nor did they receive any training on the policy until more than eight months after the plaintiff began reporting sexual harassment

to her supervisors (who also harassed her).   Id. at 1239.  Evidence showed that the company had a "lackadaisical attitude towards the harassment . . . indicating that management condoned and even encouraged the creation of a hostile work environment for plaintiff," that "the small amount of training given the employees was inadequate in light of the severity of the problem," and that "the investigation conducted by defendant was a sham given the investigators' conclusion that no harassment had taken place at the plant and defendant's refusal to discipline any of its employees."   Id. at 1242.  In contrast, Scarberry has not produced evidence from which a jury could reasonably conclude that ExxonMobil's responses were not adequate or reasonably calculated to end the harassment.

In Turnbull , the plaintiff produced evidence that the hospital where she was raped by a patient "could have, and should have, done much more" to prevent the rape, based on its knowledge of the seriousness of the risk of sexual attacks, thus creating a genuine issue of material fact as to the issue of the hospital's negligence and precluding summary judgment.  255 F.3d at 1245.  Other than arguing that ExxonMobil's first graffiti investigation should have begun one day earlier and that its graffiti investigations and investigation of Sapp should not have taken so long, which we have rejected, Scarberry can point to no evidence indicating that ExxonMobil could have done more to prevent future harassment.  As we noted in   Adler , if we required employers to impose discipline without

-14-

investigation or to impose excessive discipline, "employers would inevitably face claims from the other direction of violations of due process rights and wrongful termination." 144 F.3d at 677. We thus conclude that summary judgment was properly granted.

The judgment of the district court is **AFFIRMED**.