**F I L E D**

PUBLISH

**April 18, 2007**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SHARON ELAINE ALLEN
HOLMES, DELORES M.
GIACOLETTO, JODIE JACKSON,
and RHONDA E. STEPHENS,

     Plaintiffs-Appellants/Cross-
     Appellees,

v.

     Nos. 05-4179, 05-4180, 05-4199

STATE OF UTAH, DEPARTMENT
OF WORKFORCE SERVICES,

     Defendant-Appellee/Cross-
     Appellant.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. NOS. 2:03-CV-909-TC and 2:03-CV-916-TC)**

---

D. Bruce Oliver, Attorney at Law, Salt Lake City, Utah, for Appellants/Cross-
Appellees Holmes, Giacoletto and Jackson.

John L. Black, Jr., Attorney at Law, Salt Lake City, Utah, for Appellant/Cross-
Appellee Stephens.

Reha Deal, Assistant Utah Attorney General, Utah Attorney General's Office, Salt
Lake City, Utah, for Appellee/Cross-Appellant.

Before **TYMKOVICH**, and **BALDOCK**, Circuit Judges, and **FIGA**, District Judge.[*]

**FIGA**, District Judge.

## I. JURISDICTION FOR APPEAL

These consolidated appeals arise from an order entered June 13, 2005 granting summary judgment in favor of the defendant employer, Utah Department of Workforce Services ("DWS"), on plaintiffs' Title VII claims of sexual harassment and sexually hostile work environment (*See* the "Order" found in App., Vol. 1 at 52-62).[1] Plaintiffs appeal the entry of judgment for the employer. The employer cross-appeals from a discovery order denying it access to one plaintiff's medical records. (*See* Appellees' Br. at 39-49). A Final Judgment was entered on June 14, 2005. Jurisdiction for the appeal lies under 28 U.S.C. § 1291.

## II. SUMMARY OF CASE

As set forth in the opinion of the district judge, the plaintiffs' claims arise primarily from the conduct of one Curtis Johnson, who was their supervisor at the

---

[*] The Honorable Phillip S. Figa, United States District Judge for the District of Colorado, sitting by designation.

[1] The Record on Appeal in this case consists of four volumes of Appendices which are cited herein as "App. Vol. __", two volumes of supplemental appendices, cited as "Supp. App. Vol __" and one volume of a confidential appendix filed under seal, cited as "Conf. App. Vol. 5 "

Cedar City office of DWS. Initial allegations of sexual harassment were made against Johnson in 2001, resulting in an investigation and a three-day suspension of Johnson without pay on August 7, 2001. Johnson retired from DWS on June 28, 2002, but continued to visit the Cedar City office thereafter because his wife still worked there.

In March 2003, new allegations of harassment by Johnson were made by Plaintiff Stephens relating to his following her from the DWS office to the post office. In response to those allegations, the state agency sent an investigator, John Levanger, to investigate the charges in March 2003, and the investigation resulted in Mr. Johnson being barred from the Cedar City office and being prohibited from calling its main telephone line (Order at 2).

Thereafter, each of the four plaintiffs filed charges of discrimination with the EEOC on four different dates in March and April of 2003 as further discussed below, alleging sexual harassment or hostile work environment. After receiving notices of right to sue, Plaintiffs Holmes, Giacoletto and Jackson filed their Title VII case ("*Holmes, et al.*") against DWS on October 14, 2003.[2] Plaintiff Stephens

---

[2] The complaint in *Holmes, et al.*, filed October 14, 2003, is found in the App. Vol. 1, at 13–25.

filed a separate action on October 16, 2003 ("*Stephens* Complaint").[3]  The two actions were consolidated by the trial court on January 29, 2004 (Order at 1).

As the district court found, the plaintiffs in the *Holmes, et al.* case alleged violations of Title VII essentially arising from a continuing sexually hostile work environment relating primarily to the actions of Johnson (Order at 1), but also referring to harassment and intimidation allegedly expressed by Levanger in his March 2003 investigation.  *See* Order at 2, n.1; *Holmes, et al*. Complaint at ¶¶ 45-48, App. Vol. 1 at 20.  The *Stephens* Complaint contained four causes of action, the first alleging a violation of Title VII resulting from *quid pro quo* sexual harassment (denial of promotion), the second alleging a violation of Title VII resulting from a continuing sexually hostile work environment, and the third and fourth alleging state common law causes of action for negligent hiring and intentional infliction of emotional distress.  *See* Order at 2, n.1; *Stephens* Complaint at ¶¶ 28-50, App. Vol. 1 at 41-44.  The *Stephens* Complaint makes no express reference to the Levanger investigation.

Defendant filed a motion for summary judgment on August 30, 2004 pertaining to both cases, but setting forth some joint and some separate grounds for dismissal as to each case.  *See* Def's Mo. for Summ. J., App. Vol. 2 at 1-3.  As

---

[3] The *Stephens* complaint*,* filed October 16, 2003, is found in the App. Vol. 1, at 36-45.

to Plaintiffs Holmes and Jackson in the *Holmes, et al.* case, and as to the First Cause of Action alleged by Plaintiff Stephens, the motion asserted that the claims of all three plaintiffs were subject to dismissal because they did not file their charges of discrimination within 300 days of the last alleged act of sexual harassment (*id.* at 1-2). As to the First Cause of Action in the *Stephens* case, the motion also argued that the plaintiff was not promoted for a legitimate nondiscriminatory reason, thereby entitling the defendant to judgment as a matter of law (*id.* at 2). The motion also asserted that Plaintiff Stephens' Third and Fourth Causes of Action were barred by sovereign immunity (*id.*). The motion did not explicitly seek summary judgment on Plaintiff Stephens' Second Cause of Action for hostile work environment. Finally, the motion contended that all claims of all plaintiffs should be dismissed because their allegations did not constitute claims for hostile work environment as a matter of law, and because defendant exercised reasonable care to prevent and promptly correct any harassing behavior and plaintiffs failed to take advantage of the preventive or corrective opportunities provided to them by the employer to avoid harm (*id.* at 2).

### III. THE DISTRICT COURT'S ORDER

The district court granted summary judgment against all four plaintiffs, finding separately as to each plaintiff that most of the acts of alleged sexual harassment or hostile work environment set forth in the complaint occurred more

than 300 days before each plaintiff filed her charge of discrimination with the EEOC, and therefore were barred (Order 6-11). The district court also found that to the extent any of the acts charged occurred during the 300-day period preceding the charge, sometimes referred to as the filing period, they were not sufficient by themselves to constitute hostile work environment claims. The Court further ruled that the alleged acts that occurred within the 300-day period did not have a sufficient "relationship" to the acts alleged which occurred outside the 300-day period so as to be part of the "same hostile work environment" under the Tenth Circuit decision in *Duncan v. Manager, Dep't of Safety, City and County of Denver,* 397 F.3d 1300, 1308 (10th Cir. 2005) (Order at 7, 8 and 11), and that standing alone, the incidents within the filing period were insufficient to state a claim for hostile work environment. The district court also disposed of the claim that the Levanger investigation constituted a hostile work environment in a footnote stating there were no facts to support the "broad assertions of harassment in this respect." (Order at 2, n.1).

In addition, the district court's order noted that Plaintiff Stephens' acknowledged that her third and fourth causes of action were barred by the Utah Governmental Immunity Act (Order at 9, n. 2). Plaintiff Stephens states in her appellate brief that she is not challenging the grant of summary judgment as to her

first, third and fourth causes of action, but only as to the second cause of action (hostile work environment) (Stephens' Appellate Br. at 2-3).

The trial court ruling notes that Johnson retired from the DWS on June 28, 2002 (Order at 2). His contacts with the plaintiffs thereafter were not in the capacity of a supervisor, or even as a fellow employee, but rather as a former supervisor, former co-worker, or spouse of a co-worker. He continued to visit the Cedar City office because his wife continued to work for defendant at that location (*id.*).

## IV. ANALYSIS

As the district court granted summary judgment, we review the district court's decision *de novo*, drawing all inferences in favor of the parties opposing summary judgment. *Chavez v. New Mexico,* 397 F.3d 826, 831 (10th Cir. 2005). Here, the parties do not dispute the following dates of each plaintiffs' filing of EEOC charges, or the dates 300 days preceding the date of the filing of each charge (sometimes referred to as the "filing period"), during which period each plaintiff must have asserted an act of discrimination occurred as the trial court found:

| Plaintiff | Date of EEOC Charge[4] | 300 days prior |
| --- | --- | --- |

---

[4] Copies of the EEOC charges filed by all four plaintiffs are found in App. Vol. 2 at 308, 310, 312 and 314.

| Holmes | March 22, 2003 | May 27, 2002 | (Order at 6) |
| Giacoletto | March 21, 2003 | May 26, 2002 | (Order at 7) |
| Jackson | April 5, 2003 | June 10, 2002 | (Order at 8) |
| Stephens | April 1, 2003 | June 6, 2002 | (Order at 9) |

The appellate brief of Plaintiffs Holmes, Giacoletto and Jackson expressly agrees that the 300 day "filing periods" set forth above are correct, conceding that in each case the particular plaintiff "must have alleged incidents of harassment or discrimination that occurred on and after" these dates (*see* Appellate Br. of Appellants Holmes, Giacoletto and Jackson ("Joint Brief") at 1, 15, 17 and 22). Plaintiffs argue that they did so; the district court found otherwise. Following the approach of the district judge, this opinion deals separately with each plaintiff's particular factual situation.

## A.    Plaintiff Jackson

Plaintiff Jackson's case is perhaps the most straightforward to decide. As the district judge found, Plaintiff Jackson signed a typewritten attachment to her EEOC charge in which she details the alleged acts of harassment committed by Johnson, the last of which occurred in 2001. *See* App. Vol. 4 at 33-41. Accordingly, she does not appear to allege any specific act of sexual harassment that occurred after June 6, 2002 as the district judge found (Order at 8-9).

In her appellate brief Plaintiff Jackson merely asserts that she described several specific acts of harassment by Johnson that are reported in her EEOC charge (Joint Brief at 17-20). But as the district court found, and as we concur, they all occurred well before June 10, 2002. The Joint Brief asserts that she also reported conduct that "continued well after 2001" attributing inappropriate comments to Johnson (*id.* at 20) but the brief provides no specific incidents or dates (*see* App. Vol. 2 at 296). To the extent these assertions are found in her typewritten statement, there are also no dates. Therefore, to the extent the district concluded that Plaintiff Jackson failed to allege sufficient acts of harassment within the filing period, this Court agrees.

Finally, Plaintiff Jackson, as do the other plaintiffs in *Holmes, et al.*, asserts that the conduct of Levanger's investigation in March 2003 constitutes an act creating a hostile work environment. This separate allegation is addressed below.

B.    **Plaintiff Holmes**

This plaintiff's claim is perhaps the next most straightforward case because in December 2001, long before she filed her EEOC charge, and well beyond the 300-day filing period, she transferred out of the Cedar City office to a different DWS location (Order at 6). Thus after December 2001, she was no longer under Johnson's supervision. Moreover, the only conduct that she alleges occurred after

the May 27, 2002 date (*i.e.*, during her filing period) was an incident on June 3, 2002, when she went back to the Cedar City office for the purpose of visiting friends (apparently not on job-related business) and Johnson hugged her allegedly in "an inappropriate manner" (*id*. at 6).

The trial court found the fact that Plaintiff Holmes was not working in the allegedly hostile work environment of the Cedar City office for over a year before she filed her EEOC charge, essentially precludes her harassment claim, and the single incident which occurred in May 2002 was not enough to create a "hostile work environment" as: 1) it occurred long after she had left the allegedly hostile environment of the Cedar City office; 2) it occurred when plaintiff was no longer working in any capacity with Johnson; and 3) there was no relationship between this alleged act and the acts that occurred before the filing period so as to make a pattern of continuing acts to support a hostile environment claim. Plaintiff Holmes' transfer constituted "an intervening act rendering the hug not part of the same hostile working environment she experienced before her transfer" under the *Duncan* analysis (*id.* at 7).

As the trial court correctly noted, the *Duncan* opinion contains a number of general propositions that plainly limit a Title VII plaintiff's entitlement to link together disparate acts of discrimination in an effort to establish a pattern of sexual harassment amounting to a hostile work environment. For example, the

*Duncan* panel stated: "Title VII is not intended to allow employees to dredge up old grievances; they must promptly report and take action on discriminatory acts when they occur. Unlitigated bygones are bygones." 397 F.3d at 1308.

In analyzing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), the Supreme Court case recognizing that so long as an act contributing to the hostile work environment took place inside the 300-day filing period, acts outside the period may be considered to complete the history of acts comprising the hostile environment, Judge McConnell wrote for the *Duncan* panel:

> *Morgan* explains that when analyzing a hostile work environment claim spanning longer than 300 days "[a] court's task is to determine whether the acts about which an employee complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." Id. at 120. *Morgan* emphasizes that there must be a relationship between acts alleged after the beginning of the filing period and the acts alleged before the filing period: "if an act on day 401 had no relation to the acts between days 1-100, or for some other reason, such as certain intervening action by the employer, was no longer part of the same hostile environment claim, then the employee cannot recover for the previous acts, at least not by reference to the day 401 act." *Id*. at 118.

397 F.3d at 1308-09. The panel further summarized the application of *Morgan* as follows:

> *Morgan* holds that a series of alleged events comprises the same hostile environment where "the pre- and post-

-11-

> limitations period incidents involve[d] the same type of
> employment actions, occurred relatively frequently, and
> were perpetrated by the same managers." *Id*. at 120

397 F.3d at 1309.

As noted above, the district court in the instant case applied the above analysis, finding that the departure of Plaintiff Holmes from the Cedar City office constituted an "intervening act" that separated her from the allegedly hostile work environment. The district court therefore found that the one act that occurred in May 2002, was not sufficiently linked to the past conduct so as to rise to the level of creating a hostile work environment with respect to Plaintiff Holmes. Based on the above circumstances, this panel agrees that the district court properly found that the one incident which allegedly occurred in June 2002 was not sufficiently severe and pervasive to constitute an environment of sexual hostility with respect to Plaintiff Holmes, nor can the incident be linked with prior incidents to constitute a sexually hostile work environment.

This panel would also note that it appears Plaintiff Holmes did not file any contemporaneous complaint, much less a contemporaneous EEOC charge, in connection with the June 3, 2002 incident.[5] Thus, there is some doubt whether

---

[5] In an affidavit submitted in opposition to defendant's motion for summary judgment, Plaintiff Holmes describes the June 3, 2002 incident as mortifying, but does not state she reported it to the employer (Conf. App. Vol. 5 at 9.). Elsewhere in her affidavit, Plaintiff Holmes states that she and the other plaintiffs chose to file "directly to the EEOC" after the employer, in March 2003,

(continued...)

she herself perceived the incident to be so severe as to be indicative of sexual harassment, but more importantly, absent a complaint from the employee, there was no notice to the employer that would have enabled it to take any kind of remedial action. As this Court stated in *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 673 (10th Cir. 1998), for an employer to have liability for failing to remedy a sexually hostile work environment, the plaintiff must establish that the employer had actual or constructive knowledge of the hostile work environment but did not adequately respond to notice of the harassment, citing to *Harrison v. Eddy Potash, Inc.*, 112 F.3d 1437, 1444 (10th Cir. 1997). Here, there is no indication that the employer had timely notice of the May 2002 incident that would have required a reasonable response.

## C.    Plaintiff Giacoletto

Plaintiff Giacoletto alleged four acts of harassment, three of which occurred in 2001, but only one of which occurred after May 26, 2002 during her filing period. She asserted that in November 2002, after Johnson's retirement but apparently during one of his visits to the Cedar City office where Plaintiff Giacoletto was working with Johnson's wife, a back rub to which she consented turned into "inappropriate physical contact" (Order at 8). The district court, again

[5](...continued)
responded inadequately to Plaintiff Stephens' complaint, further suggesting to the Court that no complaint was made to the employer about the June 2002 incident until March 2003. *Id*. at 3.

-13-

relying on *Duncan*, found this one incident insufficient to state a claim for hostile

work environment because it occurred 16 months after the previous alleged acts

of 2001, and was so attenuated in time and circumstance from the 2001 acts that it

"cannot be said to be part of the same hostile work environment" (Order at 8).

The district court further noted that between the time of Plaintiff Giacoletto's

allegations regarding incidents in 2001, and the one November 2002 incident that

occurred within the filing period, Johnson had been disciplined by the employer

as a result of a Department of Human Resources investigation, and had retired

from the DWS, so that a jury could not rationally conclude that the November

2002 incident is part of the same alleged hostile work environment that allegedly

existed before the investigation. Standing alone, the one incident in November

was not enough to support a claim of hostile work environment (Order at 8).

In considering whether the district court properly applied the *Duncan*

analysis, this panel notes that unlike the situation involving Plaintiff Holmes, the

incident of November 2002 involving Plaintiff Giacoletto occurred in the office

where she still worked. On the other hand, as the trial court pointed out, unlike

the situation involving Plaintiff Holmes, Johnson was no longer a supervisor or

employee of the defendant at the time of the November 2002 incident. This is not

to say that an employer is not obligated to protect employees from sexual

harassment initiated by outsiders, customers, nonemployees or visitors to

workplace premises, for they surely are as the Tenth Circuit held in *Lockhard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1073 (10th Cir. 1998) ("EEOC regulations specifically provide that an employer may also be responsible for the acts of non-employees, with respect to sexual harassment of employees in the workplace, where the employer (or its agents or supervisory employees) knows or should have known of the conduct and fails to take immediate and appropriate corrective action.") (internal citation omitted). But even assuming such liability exists, the question remains whether the workplace is "permeated with discriminatory intimidation, ridicule, and insult." *Id.* at 1073 citing *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (quotations marks deleted).

Here, given the long passage of time from the prior reported conduct of Johnson, the fact that he had been reprimanded by the employer during the interim, the fact that he was no longer in a supervisory capacity or even a fellow employee, collectively provide support justifying the trial court's conclusion that under the *Duncan* analysis this incident in November 2002 cannot be found to be part of the same hostile environment that allegedly existed in 2001.

This panel also agrees with the district court that standing alone this incident of November 2002 does not create a sexually hostile work environment. As with the incident involving Plaintiff Holmes, it does not appear that Plaintiff Giacoletto reported this incident to the employer close to the time it happened,

-15-

but rather waited until March 2003 to provide the employer with notice of the November 2002 incident and then only when she filed her EEOC charge.[6] This again raises a question as to the severity of the incident as perceived by the employee, particularly given her admission that she initiated the physical contact by requesting a back rub. And, significantly, absent an employee report, the employer was not put on notice of the alleged conduct so as to enable it to take any kind of remedial measure.

Thus, as is the case with Plaintiff Holmes, this Court agrees that the district court properly found that the one incident that allegedly occurred in November 2002 was not sufficiently severe and pervasive to constitute an environment of sexual hostility with respect to Plaintiff Giacoletto, nor can the incident be linked with prior incidents to make out a sexually hostile work environment.

### D.    Plaintiff Stephens

As noted above, Plaintiff Stephens' separate complaint alleged a claim for *quid pro quo* sexual harassment relating to the denial of a promotion (First Cause

---

[6] Plaintiff Giacoletto's affidavit submitted in opposition to defendant's motion for summary judgment describes the November 2002 incident as having been initiated by her, and although claiming it amounted to conduct "based on sex," does not state she reported it to the employer (Conf. App. Vol. 5 at 87). Elsewhere in her affidavit, Plaintiff Giacoletto states that she and the other plaintiffs chose to file "directly to the EEOC" after the employer, in March 2003, responded inadequately to Plaintiff Stephens' complaint, further suggesting that no complaint was made to the employer over the November 2002 incident until March 2003. *Id*. at 83.

of Action), which the trial court dismissed, but which order is not being challenged on appeal.

Plaintiff Stephens' separate claim of hostile work environment relates to two acts which occurred after June 6, 2002 during her filing period, namely the denial of a promotion in November 2002 and an incident in March 2003, when Johnson allegedly followed her from the DWS office to the local post office in a manner that she describes as "stalking" and grabbed her "frightening her to death." (Pl. Stephens' Opp'n to Summ. J., App. Vol. 3 at 167).

The trial court found that these two acts were insufficient to make out a hostile work environment claim. As with Plaintiffs Holmes and Giacoletto, the trial court found these acts too "attenuated" under the *Duncan* analysis from the earlier acts of harassment because Johnson had nothing to do with the denial of Plaintiff Stephens' promotion in November 2002 (having retired) and being followed to the post office is not connected because Johnson was "not constantly present in the [Cedar City] office" at the time (Order at 11).

On appeal, Plaintiff Stephens' separate appellate brief makes an independent argument for reversal. Before reaching the argument that the incident at the post office is alone sufficient to support a claim for sexually hostile work environment, she instead argues for reversal on the ground she had no notice that the trial court was contemplating summary judgment on the issue of

the timeliness of her EEOC charge, at least as to her hostile environment claim. She claims she was unfairly prejudiced when it was raised at the oral argument on February 16, 2005 before the trial court (Stephens Appellate Br. at 3, 11-15). She claims the district court erroneously raised the issue *sua sponte*, and had she had notice, she would have pointed to other acts of harassment that occurred during the filing period. *Id.*

### 1.    Analysis of *sua sponte* grant of summary judgment

This court first addresses Plaintiff Stephens argument that the trial court erred in granting summary judgment on this ground, for if it did, this court need not reach her other arguments.

While Plaintiff Stephens asserts in her appellate brief that there was other evidence of harassment during her filing period which she would have offered had she had notice of this issue at the hearing, and cites to deposition testimony which she claims is to that effect (*see id.* at 5, ¶ 7), the deposition excerpts attached to her brief at Addendum D contain only general statements of harassment without specific dates. Moreover, given the fact that her filing period began June 10, 2002, and Johnson left employment with defendant on June 28, 2002, there is no basis from which to infer that these undated events referred to in her deposition occurred during the filing period after June 10, 2002.

In response to this independent argument, the defendant asserts that a district court has the power to enter summary judgment *sua sponte*, provided that the losing party was on notice that she had to come forward with all of her evidence, citing to *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Defendant claims that the trial judge on the record at the hearing on defendant's motion on February 16, 2005 raised the issue of the timeliness of Plaintiff Stephens' second claim, and gave her an opportunity to come forward with evidence (Def.'s Appellate Br. at 5, and 22-24, citing to transcript of hearing, App. Vol. 1 at 100-01).

We note that the transcript of the February 16, 2005 hearing reveals that the district judge listed the incidents mentioned in Plaintiff Stephens' charge which had occurred within the 300 days preceding the filing of the charge, and requested Plaintiff Stephens' counsel to state whether there was anything else he wished to offer. Counsel responded stating "there really is nothing I have to add to what the court has stated." *Id.* at 101. Defendant thus asserts that Plaintiff Stephens had the opportunity to provide additional evidence but did not argue that additional evidence was available in the summary judgment record as she now argues on appeal (Def.'s Appellate Br. at 25).

In *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166 (10th Cir. 2005), a case relied on by defendant here, this Court, quoting

*Celotex*, reiterated that a *sua sponte* grant of summary judgment although not encouraged, is permissible, provided that the losing party was put on notice to come forward with all its evidence. 412 F.3d at 1166, 1170 (10th Cir. 2005). As the panel noted, in that case the district court before ruling "invited the parties to proffer any extrinsic evidence they thought relevant to this question." *Id.* However, the district court did so by written order of September 2, 2003, and not on the record in open court, and appears to have issued its written order shortly thereafter on September 6, 2003. *Id.* at 1169.

This is not exactly what happened here. Yet, it is clear from the transcript that Plaintiff Stephens' counsel was given an opportunity to tender evidence, and he could have cited to the deposition transcript then, as he now does in the appellate brief. The same deposition excerpts were part of the record before the trial court. *See* Ex. 1 to Stephens' Opp'n to Def.'s Mo. for Summ. J., Excerpts from Stephens' deposition, App. Vol. 3, 210-38. If counsel believed the deposition provided evidence of post-June 10, 2002 harassing conduct by Johnson, he had the opportunity to come forward with the evidence before the district court ruled, but did not do so.

In addition, defendant contends that Plaintiff Stephens was not prejudiced by the lack of notice because she had no probative evidence to offer of post-June 2002 harassing conduct (Def.'s Br. at 29-35). In *Ward v. State of Utah*, this Court

held that "[i]f a losing party was not prejudiced by the lack of notice, we will not reverse simply because the grant of summary judgment came sua sponte." 398 F.3d 1239, 1245-46 (10th Cir. 2005).

The defendant's appellate brief makes a persuasive argument that Plaintiff Stephens' deposition testimony, attached to the appellate brief and contained in the record before the trial court even though not expressly cited to the trial judge, is too vague to establish a pattern of severe and pervasive conduct required to make out a hostile work environment claim. As noted above, this testimony is completely devoid of dates to permit the court or jury to determine that the described acts occurred during the filing period (Def's Br. at 30-33). Having reviewed the deposition excerpts ourselves (contained in Addendum D to Stephens Br.), this panel is unable to identify a specific date during the filing period on which any described harassing act supposedly occurred.

Thus, even if plaintiff's counsel had tendered these deposition excerpts to the trial court they would not have provided evidence of any specific harassing act during the filing period. Thus, Plaintiff Stephens' argument for reversal on the ground that the trial court erred by a *sua sponte* entry of summary judgment must be rejected.

### 2. Whether Plaintiff Stephens brought forth sufficient evidence to support her remaining claim of a sexually hostile environment

The question remains whether the two incidents that occurred within the filing period asserted by Plaintiff Stephens were sufficient to submit a claim to a jury for a sexually hostile work environment in violation of Title VII. As noted, the district court found that they were not, as they were too attenuated from earlier alleged harassing conduct under the *Duncan* analysis to constitute a pattern of harassment, and standing alone did not support such a claim (Order at 11).

Here too, as in the situations involving Plaintiffs Holmes and Giacoletto, the passage of time since the 2001 conduct, the intervening discipline of Johnson, the fact that he was no longer a supervisor after June 2002, and the absence of evidence that he played any role in the alleged denial of promotion to Plaintiff Stephens in November 2002, all support the trial court's conclusions that the pre-filing period conduct of 2001 cannot be properly linked with the events Plaintiff Stephens alleges to have occurred in November 2002 and March 2003 to support an inference of a sexually hostile work environment fostered by the employer.

In addition, this panel agrees that the two incidents that did occur during the filing period do not rise to the level of creating a hostile work environment. First, as noted, even if Plaintiff Stephens was denied a promotion in November 2002, she has come forward with no evidence that the denial was in any way

-22-

connected to conduct of Johnson, who by then had been gone from employment by defendant for at least four or five months. Second, while the actions of Johnson in allegedly stalking Plaintiff Stephens in March 2003, and in allegedly grabbing her and frightening her may by themselves be considered severe, this court notes, as did the district court, that such actions did not occur on the premises of the employer, or otherwise in connection with her work, and did not involve a fellow employee or supervisor. Plaintiff Stephens has cited no cases to suggest that employers have a duty under Title VII to protect employees off the work premises from the conduct of nonemployees, even if such conduct may be found to be severe in its sexual overtones. The fact that Johnson may have committed an assault or some other tort against Plaintiff Stephens off the work premises does not automatically translate into a Title VII violation by her employer.

Third, this Court notes that Plaintiff Stephens, unlike her counterparts, apparently did promptly report the March 2003 incident at the post office (*see* App. Vol. 4 at 309). As the district court found, when Plaintiff Stephens reported that she "felt harassed by Mr. Johnson when he followed her from the DWS office to the post office" the employer conducted an investigation and "barred" Johnson from entering the Cedar City Employment Center and prohibited him from calling it main telephone line" (Order at 2). By letter dated March 27, 2003, Plaintiff

Stephens was advised of the remedial measures imposed by defendant against Johnson (*see* App. Vol. 2 at 305).

In *Adler v. Wal-Mart Stores, Inc.*, *supra,* this Court further explained the employer's liability for allowing a sexually hostile work environment after it is reported to the employer by the employee arises only if the employer fails to take adequate remedial and preventative responses to any actually or constructively known harassment. 144 F.3d at 673. A court may determine on summary judgment whether an employer's responses to claims of sexual harassment were reasonable as a matter of law. *Scarberry v. ExxonMobil Oil Corp.*, 328 F.3d 1255, 1257 (10th Cir. 2003).

Although the district court did not expressly so find, it appears to this Court that the actions of barring Johnson from the Cedar City office and prohibiting him from calling the main line, where he might contact other employees, is an adequate and reasonable response to the type of off-premises harassment allegedly suffered by Plaintiff Stephens. Thus, alternative grounds exist to support the trial court's grant of summary judgment on Stephens' claim, even if Johnson's actions of March 2003 alone were enough to support a claim for sexually hostile work environment. Here, it appears the employer took reasonable and prompt measures to address the conduct of the perpetrator given the circumstances under which the conduct occurred.

## E.     The Levanger Investigation

The complaint filed by Plaintiff Stephens makes no allegations regarding the investigation carried out by Mr. Levanger, and therefore makes no claims that the investigation itself was sexually discriminatory in violation of Title VII (*see* App. Vol. 1 at 36-45).  The only averments regarding the Levanger investigation are found in the complaint filed in *Holmes, et al.*  The plaintiffs in that case essentially alleged that in March 2003 they were interviewed off-site in Cedar City by Mr. Levanger of the defendant's Human Resources Department (App. Vol. 1 at 20).  They allege that they were interviewed without attorneys present, although they had requested to bring attorneys, the interviews were recorded, and the results of that investigation "have not been made known" to them, leaving them to conclude that the interview was conducted at the behest of "Risk Management," was not for "their benefit" and was not conducted in good faith (*id.*).[7]

While the appellants' brief now characterizes the conduct of Mr. Levanger as consisting of "harassing interviews" and including "reported intimidation and threats" (Appellant's Joint Br. at 6), no such allegations are found in plaintiffs' complaint.  Moreover, as noted above, each of these three plaintiffs filed EEOC charges in March or April 2003, on the dates set forth above.  This panel has

---

[7] As noted above, the results of the investigation, that is the barring of Mr. Johnson from the Cedar City office, were made known to Plaintiff Stephens.

reviewed the charges filed by each plaintiff, and the typewritten attachment to Plaintiff Jackson's charge, and finds no reference in them to any threatening, intimidating or harassing conduct by Mr. Levanger, or any mention whatsoever of Mr. Levanger or his investigation.

Against this factual background, the district judge disposed of the claim that the Levanger investigation constituted a hostile environment in a footnote stating the allegations that plaintiff felt harassed by Mr. Levanger are "wholly separate from the Plaintiffs' claim of a hostile work environment" and plaintiffs had not provided facts to support the "broad assertions of harassment in this respect." (Order at 2 n.1). On appeal, plaintiffs argue that Mr. Levanger's alleged conduct, although arguably "gender neutral" in that he may have acted in the same manner as to any complainant, should have been found to be sexually discriminatory in this case due to the "entire body of conduct" involving plaintiffs' interactions with Johnson, citing to *Chavez*, 397 F.3d at 835-36 (Appellants' Br. at 34).

While the reasons for entering summary judgment on this aspect of these three plaintiffs' claims of a sexually hostile work environment perhaps could have been spelled out by the district court in more detail, this Court nonetheless agrees that summary judgment on these claims was correctly entered, without the necessity of reaching the plaintiffs' argument based on *Chavez.* It is fundamental

law that a plaintiff may not assert a Title VII claim with respect to conduct not first asserted in a discrimination charge filed with the EEOC. *See e.g. Simms v. Oklahoma ex rel. Dept. of Mental Health*, 165 F.3d 1321, 1326 (10th Cir.), *cert. denied,* 528 U.S. 815 (1999) and cases cited therein. None of the three plaintiffs here filed a charge asserting that Mr. Levanger's conduct amounted to sexual harassment. Accordingly, the trial court's entry of summary judgment is correct.

## V. DEFENDANT'S CROSS-APPEAL

In light of the foregoing ruling on the district court's summary judgment order, the defendant's cross-appeal of the discovery order is deemed moot.

## VI. CONCLUSION

For all these reasons, the district court's order granting summary judgment as to the claims of all four appellants on their claims under Title VII is affirmed.